## STATE v. AUBURN HARE.

154 N. W. (2d) 820.

December 8, 1967—No. 39,641.

---

*Marlon O. Haugen,* for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Acting Solicitor General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* Assistant County Attorney, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a judgment convicting defendant of murder in the first degree.

Defendant and Mrs. Agnes Winge occupied an apartment together at 3025 Portland Avenue, Minneapolis. Charles R. Cooke lived in an adjoining apartment with Mrs. Florence Whipps. During the evening of December 15, 1963, Mrs. Whipps called the police after she and Cooke had heard an argument and some shots in the apartment occupied by defendant and Mrs. Winge. Officers Chester Langaard and James Hendricks, both wearing uniforms, were cruising in the vicinity of Chicago Avenue and Lake Street and were dispatched to the shooting reported by Mrs. Whipps. They approached the apartment house and Officer Langaard put the car in neutral and set the emergency brake, while his partner, Officer Hendricks, shotgun in hand, headed for the front entrance of the building. After Langaard finished parking the car, he followed his partner, armed with his .38-caliber revolver. Hendricks inquired of Mrs. Whipps where the shooting came from and was directed to defendant's apartment. He entered the apartment and apparently saw defendant with his gun in hand and Mrs. Winge, who had been shot, sitting on a davenport. He spoke to defendant, saying, "Give me the gun." Defendant instead shot Officer Hendricks, first in the abdomen, and, as he bent over, twice more in the chest. It is conceded that Hendricks died from these bullet wounds and that defendant shot him. Officer Langaard then entered the apartment and shot defendant, who recovered from his wounds. Mrs. Winge also died from her wounds.

Defendant was indicted by the grand jury for first-degree murder and,

having waived a jury trial, was tried by the court alone and found guilty of murder in the first degree. The only question presented here is whether there was such premeditation as to constitute murder in the first degree.

The relevant statutory provisions are Minn. St. 609.185, which reads in part:

"Whoever does either of the following is guilty of murder in the first degree and shall be sentenced to imprisonment for life:

"(1) Causes the death of a human being *with premeditation and with intent to effect the death of such person or of another.*" (Italics supplied.)

And § 609.18, which provides:

"For the purposes of sections 609.185 and 609.19, 'premeditation' means to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission."

These definitions are taken from the Criminal Code of 1963. Prior to that Minn. St. 1961, § 619.07, defined murder in the first degree as follows:

"The killing of a human being * * * is murder in the first degree, when perpetrated with a *premeditated design* to effect the death of the person killed or of another, * * *." (Italics supplied.)

It is apparent from the Advisory Committee's Comments to the 1963 Criminal Code that there was no intention to change the law with respect to premeditation. "[P]remeditated design to effect the death of the person killed or of another" is, we think, synonymous with "premeditation and with intent to effect the death of such person or of another."

■ We have frequently held that the premeditation essential to constitute a killing murder in the first degree need not exist for any specific period of time. State v. Gowdy, 262 Minn. 70, 113 N. W. (2d) 578;[1] State ex rel. Fruhrman v. Tahash, 275 Minn. 242, 146 N. W. (2d) 174.[2]

---

[1] This case was decided under the old statute containing the words "premeditated design."

[2] This case was decided after adoption of the 1963 Criminal Code.

Similarly, we have frequently held that premeditation and design, or intent as used in the new code, are products of the mind and wholly subjective, and that they are often incapable of direct proof but can be inferred from circumstantial proof. See, State ex rel. Fruhrman v. Tahash, *supra*.

Here, the doctor who performed the autopsy on Officer Hendricks testified that the first shot, which struck Hendricks in the abdomen, undoubtedly did not cause his death. He died from massive hemorrhages of the lungs and heart, caused by the second and third shots, which entered the body in such a way as to travel downward through the lungs and through a part of the heart. Even if it could be said that the first shot was the result of reflex action and was not premeditated, certainly an inference could be drawn that the second and third shots were within the definition of premeditation with the intent to kill the person who was shot. Aiming a loaded revolver at a person and firing three shots, all of which strike the target, surely permits an inference of premeditation with intent to kill.

We see no need of discussing the matter further. We are convinced that the court had ample evidence upon which to base a finding of premeditation with intent to kill, constituting the crime of murder in the first degree.

Affirmed.