## STATE v. NICKIE LEONARD TAYLOR.

178 N. W. (2d) 892.

July 17, 1970—No. 41536.

C. Paul Jones, State Public Defender, and Roberta K. Levy, Assistant State Public Defender, for appellant.

Douglas M. Head, Attorney General, George M. Scott, County Attorney, and David G. Roston, Assistant County Attorney, for respondent.

PETERSON, JUSTICE.

Defendant pleaded guilty to the crime of aggravated assault[1] and was sentenced to the State Reformatory for an indeterminate term not to exceed 3 years. Imposition of sentence was stayed for 3 years, subject to probation. The stay was revoked for breach of probation and sentence was imposed.[2] This appeal is from the judgment of conviction.

Defendant contends that there was no factual basis for his plea of guilty and that, as a result of insufficient inquiry by the trial court, his plea was improvidently accepted.

The alleged assault, as related by defendant, occurred on March 25, 1967, at a Clark gasoline service station in north Minneapolis, where he was employed. At about 1:30 a. m. one Victor Andrews, a part-time employee at the station, together with a few friends, came into the station. For reasons which are unclear, except that Andrews was drunk, Andrews and defendant began to fight.[3] Andrews was bigger and stronger than defendant, so Andrews had the better of the battle. The police arrived and, after separating the parties, ordered Andrews to leave. Soon thereafter defendant's sister, Roberta Wark, and

---

[1] Minn. St. 609.225 provides: "Subdivision 1. Whoever assaults another and inflicts great bodily harm may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $10,000, or both.

"Subd. 2. Whoever assaults another with a dangerous weapon but without inflicting great bodily harm may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both."

[2] Parole was revoked on January 19, 1968. Defendant was again released on parole on July 7, 1968.

[3] Although on this record we have only the account of the defendant, the account of Andrews and other witnesses was given in a workmen's compensation proceeding upon the claim of Andrews, from which it could have been found that defendant shot Andrews in the back immediately after a fight between Andrews and defendant's brother-in-law. Andrews v. Hoss, 286 Minn. 514, 174 N. W. (2d) 134.

brother-in-law, Harvey Wark, came to the station. Andrews returned to the station about an hour and a half later and allegedly started fights with both Wark and defendant. In the heat of the action, defendant pulled from his pocket a small-caliber pistol (furnished by his employer to station employees) and fired a shot which struck Andrews.

Defendant appeared before the Honorable Theodore B. Knudson, judge of the district court, on June 1, 1967, at which time he withdrew a prior plea of not guilty and pleaded guilty. He appeared before Judge Knudson again on July 7, 1967, following a presentence investigation. Defendant at the later date gave this account of the shooting:

"Sir, he was a heap bigger than I was, and you know, a drunk man is pretty hard to handle when he's mad. I sure wasn't doing much against him by myself, and everybody, after this was over, the police said, 'Why didn't you hit him with something?' I'm standing out in the middle of a parking lot with a gas pump in my hand, the nozzle, what was I supposed to hit him with; there's nothing there to hit him with. Then he started pounding me around—I got to protect myself." [4]

Defendant's statement, together with the other circumstances he related, disclosed a likelihood of self-defense. Judge Knudson accordingly vacated defendant's plea of guilty, and a plea of not guilty was entered.

Defendant appeared before the Honorable Edward J. Parker on August 9, 1967, and again pleaded guilty. His counsel at that time interrogated him as to his understanding of the serious nature of the charge against him and his rights as an accused. [5]

---

[4] At the earlier date defendant told Judge Knudson that he had never fired a pistol before and "it never had come out before that, it just—I didn't know I even done it until I did it."

[5] Specifically, that he was charged with a felony, punishable by imprisonment for 5 years; that he was presumed innocent; that the state must prove his guilt beyond a reasonable doubt; and that he had a right to trial by jury.

His counsel then developed three important facts not disclosed to Judge Knudson but relevant to acceptance of his plea of guilty. First, that the prosecutor had promised to make a recommendation of the sentence thereafter in fact imposed but with the understanding that the court was not obligated to accept that recommendation.[6] Second, that private counsel with whom he had conferred since his appearances before Judge Knudson had apprised him of "the fact that there was an independent witness" to the shooting (although the nature of that witness' observation is undisclosed and left to surmise). Third, and most important, he responded affirmatively to questions of his counsel negating the crucial element of self-defense:

"Q. Now, did you in fact fire this pistol and the bullet did in fact strike Mr. Andrews, is that correct?

"A. Yes, sir.

"Q. Now, was Mr. Andrews armed with any type of weapon?

"A. No, sir. Not that I know of.

"Q. And I have gone over with you in regard to the law of self defense, is that correct?

"A. Yes, sir.

"Q. And it's also true in this matter that you could have retreated, isn't that correct?

"A. Yes, I could have.

"Q. It was not necessary for you to stand your ground, is that correct?

"A. Right, sir.

"Q. And instead you chose to stand your ground and drew the pistol, is that correct?

"A. Yes, sir."

---

[6] It was confirmed on oral argument that defendant's plea of guilty was negotiated with assistance of counsel, resulting in a sentence less severe than authorized by the statute and a stay in the imposition of that sentence. The appeal obviously occurred only upon the subsequent revocation of the stay.

A colloquy between Judge Parker and defendant was in the same tenor:

"THE COURT: Are you satisfied that you understand now what is or what is not a good legal defense to the charge of Aggravated Assault?

"THE WITNESS: I do.

"THE COURT: And after consultation with Mr. Gill and one of the other members of the Public Defender's staff and with Mr. Narveson [private counsel], and after this legal advice that you have received from various sources, are you persuaded that you are in fact guilty of this crime as you are charged?

"THE WITNESS: Sir, I did fire the weapon for the reasons of—that has nothing to do with this. I did in fact shoot the man, yes, and the reasons behind it have nothing to do with it.

"THE COURT: You understand that the reasons that you had, motivation did not constitute a legal defense to the charge, is that correct?

"THE WITNESS: That is right, sir.

"THE COURT: So that you are in fact guilty of the crime that you are charged with?

"THE WITNESS: Yes, sir.

"THE COURT: Has anybody promised you anything with regard to any sentence that I may impose?

"THE WITNESS: No, sir. None at all.

"THE COURT: Has anyone made any threats to you to force you to make this plea?

"THE WITNESS: No, sir.

"THE COURT: After all of this legal consultation now, three different lawyers, you are persuaded or convinced, are you, that the wise and prudent course for you is to go ahead and enter a plea of guilty and leave the question of sentencing up to the discretion of the Court?"

We hold that acceptance of defendent's plea of guilty by Judge Parker was not improvident. It is essential, of course, that the

record establish a factual basis for a plea of guilty, whether the factual showing is elicited by counsel or by the court itself. State v. Johnson, 279 Minn. 209, 156 N. W. (2d) 218; Chapman v. State, 282 Minn. 13, 162 N. W. (2d) 698. The issue seemingly arises only because of variation in the disclosures originally made before Judge Knudson and subsequently made before Judge Parker. On the basis of the more limited disclosures to Judge Knudson, defendant's plea of guilty was properly rejected. But on the basis of the showing before Judge Parker, expressly negating the element of self-defense, defendant's plea of guilty was not improperly accepted. With the element of self-defense thus categorically negated, there was an adequate factual basis for acceptance of his plea of guilty.

Whatever doubt was arguably created in this case by the statements made to Judge Knudson by defendant, we do not think it mandatory that a judge in a multijudge metropolitan court go beyond the showing presented to him to ascertain whether the defendant has previously appeared before another of the judges and what inconsistent statements, if any, were made to such other judge. The issue is to be determined upon the record before the judge to whom the plea is tendered.

The inquiry by court and counsel as to the critical element of self-defense was not constitutionally deficient.[7] It was rather cryptic, to be sure, for the circumstances related by defendant should ordinarily prompt more thorough exploration. We are mindful, however, that this was a negotiated plea of guilty with the assistance of competent counsel who were acutely aware of this available defense. It was for them to measure the likelihood

---

[7] We have considered Boykin v. Alabama, 395 U. S. 238, 89 S. Ct. 1709, 23 L. ed. (2d) 274, and McCarthy v. United States, 394 U. S. 459, 89 S. Ct. 1166, 22 L. ed. (2d) 418, relied upon by defendant. Because we deem them readily distinguishable, we do not determine whether they are retrospectively applicable. Cf. Gallagher v. State, 286 Minn. 335, 176 N. W. (2d) 618; State ex rel. Fruhrman v. Tahash, 275 Minn. 242, 146 N. W. (2d) 174.

and consequences of an adverse verdict if the defendant elected to stand trial. Defendant had had extensive consultation with both private counsel and the public defender and, as a result of his appearances before both Judge Knudson and Judge Parker, it is clear that he was aware of the elements of the charge against him and the consequences of admitting the truth of those charges.[8] The plea of guilty was made intelligently and voluntarily.

Affirmed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[8] Until revocation of probation and imposition of the 3-year sentence, the result of the plea negotiation had been favorable to defendant and, until ultimate imposition of the sentence as the result of his own conduct, it had been unchallenged. As we observed in Chapman v. State, 282 Minn. 13, 16, 162 N. W. (2d) 698, 700, the integrity of a guilty plea as a "solemn commitment" would be tarnished if an accused were allowed to "play games" with the judicial process.