## STATE v. CHARLES DAVID ANNIS.

241 N. W. 2d 482.

April 23, 1976—No. 45375.

*C. Paul Jones,* State Public Defender, and *Rosalie E. Wahl,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, *Kent G. Harbison,* Special Assistant Attorney General, and *John F. Corbey,* County Attorney, for respondent.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

Defendant, Charles David Annis, upon appeal from a conviction of burglary contends that he was denied a fair trial by the denial of continuances for substitute counsel to prepare for trial and, later, to locate a witness to corroborate his defense of intoxication; that he was denied effective representation; and that the

admission of certain testimony of an accomplice was prejudicial. We affirm.

The evidence of defendant's guilt, which is overwhelming, will be briefly recited to give perspective in considering these contentions. On January 17, 1974, the Mankato Police Department, having learned that a burglary might occur, established a stakeout, positioning several officers around the Mankato riverfront district. Detective Earl Marx cruised the area in his automobile, at one point observing defendant talking with Jerry Evers, Jerry Sullivan, and George Nielsen on the sidewalk in front of the Bodega Bar. Marx later saw two pickup trucks and two automobiles at Evers' residence. Four persons were standing between the vehicles talking, and Marx recognized one of the trucks as belonging to defendant. Still later, Marx observed defendant's truck parked at the Mankato Iron & Metal Company salvage yard, near the entrance for railroad cars. Four persons were traveling between the salvage yard and the truck, loading something into it (later identified by the owner as a unique grade of scrap metal collected for sale in his business).

Soon defendant's truck began traveling in Detective Marx' direction with its headlights off. Marx pulled his automobile into the street, stepped in the light of its headlights, and held up his hands in an effort to stop defendant's truck. It did not stop, but, rather, accelerated, requiring Marx to jump out of its path. Marx saw that defendant was driving the truck and called out to defendant by his nickname, "Aubbie, you are under arrest." When the driver of the truck kept going without showing its brake lights or other signs of stopping, Marx drew his revolver and fired a shot. The truck swerved off to the right, came to a stop, and defendant emerged with his hands in the air. Marx summoned aid, and defendant was taken into custody. The bed of defendant's truck was loaded with scrap stolen from the Mankato Iron & Metal Company. Marx testified that defendant had no difficulty walking at the time of his arrest and that he did not believe him to be intoxicated.

Detective Vernon Rush manned a railroad tower during the stakeout. He saw defendant's pickup leave the Bodega Bar (some 50 or 60 feet away) with an empty bed. Later, about 10:15 p. m., Rush saw two or three people moving something into the truck at the salvage yard, then he saw four people. Rush left his post in the tower and approached the building next to the salvage yard with another officer. They heard some "clunk, clunk" noises coming from inside the building, and shortly they saw two persons near the building carrying heavy loads. The two persons began to run, with the officers in pursuit. Rush fired one shot, and one of the fleeing pair, Jerry Sullivan, stopped and was arrested. Rush later learned that the other person was George Nielsen. He testified that Jerry Evers was also arrested that night in connection with the burglary.

Officer Gene Bunde assisted in the arrest of defendant. He patted defendant down and rode with him to the police station and did not detect the odor of liquor.

Jerry Sullivan testified that he had gone, together with defendant and George Nielsen, to the Mankato Metal & Iron Company building after it had closed for the day on January 17. They walked from the Bodega Bar, entered the salvage yard through a fence, broke the lock off the door of the building, and then returned to the Bodega Bar. After having pizza they went to Jerry Evers' residence. At some point they discussed breaking into the salvage yard building and getting the metal. Once at the salvage yard, defendant and the three others went into the building and carried the scrap metal to the truck. Sullivan testified that defendant had no trouble in loading the material into the truck.

1.   Defendant was the only witness in his own behalf. His sole defense was that on the night of the burglary he was so intoxicated he could not form the requisite criminal intent. He testified that he began drinking at the Bodega Bar about 8 a. m. on January 17, and that he drank beer until about 4 or 4:30 p. m., when he left to take his car to his girl friend; that he returned to the bar about an hour later and continued playing pool, during

which time he used certain drugs and drank tequila, Schnapps, and mixed drinks. Finally, he testified that he did not remember leaving the bar again.

Defendant's counsel, in cross-examination of Jerry Sullivan, who previously had testified as a witness for the prosecution, attempted to establish that defendant had been drinking heavily at the Bodega Bar. On redirect examination the county attorney asked Sullivan if he had been threatened before the trial. He responded that Evers had told him that if he testified against Evers, Evers would kill him, the judge, and himself. Defendant argues that this testimony of threats by Evers to Sullivan was grossly prejudicial because it implied that defendant was involved in the threats, bringing defendant's character into issue before he himself had done so and impermissibly giving corroborative weight to Sullivan's testimony. There was, however, no objection to this testimony. The likelihood of prejudice, in any event, was lessened by the further cross-examination which established that defendant had nothing to do with the threats and by the court's cautionary instructions to the jury. It is unlikely, in view of the extremely strong evidence of guilt, that this testimony substantially influenced the jury in reaching its verdict. State v. O'Geay, 299 Minn. 58, 216 N. W. 2d 636 (1974).

2. Defendant contends that the trial court abused its discretion when it denied his motion for a continuance to locate and produce as a witness a bartender at the Bodega Bar. After the state had rested and defendant had testified in his own behalf, his counsel requested a recess for the purpose of locating the bartender, whom the sheriff's office had been attempting to subpoena. The court inquired how long they had been looking for this person, and defendant's counsel replied that his first discussion about the witness had been the previous morning. Thereupon the court granted a 1 1/2-hour recess until the afternoon session.

Following the recess, defendant's counsel advised the court that neither he nor defendant had ever talked to the still-missing

witness, but it was believed he would testify that defendant arrived at the bar early on January 17 and that he drank steadily except for the time when he left the bar in the afternoon. On this offer of proof, defendant's attorney requested a recess until such time as the missing witness could be located, "whether it be today or next week or whenever." The court asked for and received confirmation that no one really knew what the witness would say and that no one knew whether or when he could be located.

Under the circumstances, it was not an abuse of discretion to deny the requested continuance. The only evidence the missing witness might provide would have been cumulative to defendant's own testimony. While such testimony, if favorable, would have reinforced defendant's testimony on the amount of drinking he had done, any prejudice from not being able to present the cumulative testimony was far outweighed by the strong evidence that defendant did have the capacity to form the requisite criminal intent. As the recital of the evidence manifests, defendant had participated in planning the burglary prior to his nighttime drinking and had effectively participated in the extensive physical activity entailed in its execution during a considerable part of those nighttime hours.

3. We find no merit in defendant's final contention that the trial court, in denying a 30-day continuance for substitute counsel to prepare for trial, abused its discretion and denied him effective representation. Counsel, who had been substituted on the day set for trial, acknowledged familiarity with the file but suggested that the continuance be for 30 days; the court granted a continuance for 6 days. The record amply demonstrates that defendant's counsel acted with competence in defense of his client.

Affirmed.