**STATE of Minnesota, Respondent,**

v.

**Dennis David NEUMANN, Appellant.**

**No. 47069.**

Supreme Court of Minnesota.

Jan. 20, 1978.

C. Paul Jones, Public Defender, Philip Marron, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E. Bergstrom, Chief, Appellate Division, David W. Larson and Lee Barry, Asst. County Attys., Minneapolis, for respondent.

Heard before OTIS, ROGOSHESKE, TODD and WAHL, JJ., and considered and decided by the court en banc.

TODD, Justice.

Dennis Neumann and George Hatcher robbed a Clark service station at gunpoint. The 15-year-old station attendant was abducted and driven to the countryside where Neumann shot and killed him. Neumann was indicted for first-degree murder, kidnapping, and aggravated robbery and initially pleaded not guilty. After 2 days of trial, the plea of not guilty was withdrawn, and a plea of guilty to all three charges was substituted. Defendant was immediately sentenced to the mandatory life term. Neumann alleges on appeal that his guilty plea was improperly accepted by the trial court on several grounds. We affirm.

The record on appeal contains two somewhat conflicting versions of the events which transpired on October 18, 1975, the day of the robbery and homicide. Both versions were related by appellant Neumann. The first statement concerning Neumann's involvement in the homicide was a confession by him to the police shortly after he was arrested, Neumann retold that story with some variations from the witness stand at his trial. What follows is a composite version of Neumann's confession and subsequent trial testimony.

On the morning of October 18, Neumann and Hatcher purchased some ammunition for a .22–caliber pistol at a hardware store in their hometown of Annandale, Minnesota. Later, the two drove toward Minneapolis, each of them having first taken five or six "speed" tablets, an equal number of "Route 66" pills, and a few sinequan pills. Upon their arrival in Robbinsdale, the pair commenced a period of extensive drinking, during which time each of them spent $40 to $50 purchasing a variety of mixed drinks and beer. They also shared a marijuana cigarette.

Later in the evening, Hatcher suggested that he and Neumann rob the Clark service station located in Crystal, Minnesota. Apparently the two of them had previously been involved in an armed robbery of a different service station and in two or more burglaries of homes. Neumann claims he first declined because he was too intoxicated. Nevertheless, at approximately 10:30 p. m., the pair proceeded to the station in Hatcher's car. There they accosted the station attendant, robbed him, and forced him to lie face down in the back of the car. Enroute to a secluded area, Hatcher told the attendant that he would be released in the country.

When they reached their destination, Hatcher whispered to Neumann, "We will have to waste him." In his statement to the police, Neumann indicated that he was at first reluctant to carry out this suggestion but admitted that he ultimately agreed with Hatcher, apparently because the attendant had seen his abductors' faces and would be able to identify them. At trial,

however, Neumann testified that he complied with Hatcher's wishes because the latter threatened Neumann with the murder weapon. Neumann stated that because of previous experiences with Hatcher, he feared that Hatcher's threat would be carried out if he refused to kill the attendant.

In any event, the three got out of the car, and Hatcher bound the attendant's hands. While Hatcher turned the car around, Neumann walked with the attendant into the woods and, according to his confession, "emptied the gun into him." At trial a pathologist testified that he had removed six bullets from the attendant's head, neck, and upper back. The pathologist also opined that one of the shots had been fired with the muzzle of the murder weapon pressed against the skin of the victim's neck.

At trial, Neumann testified that he could not remember leaving the car or walking into the woods but that he did recall being in the woods with the attendant. While on the witness stand, he also admitted shooting the attendant but claimed he remembered firing only one shot. Neumann professed that he had no particular intention as he walked into the woods with his victim and stated that "things happened too fast."

Approximately 11 days after these events, Hatcher and Neumann were arrested and charged by complaint with second-degree murder, kidnapping, and aggravated robbery. At their initial court appearance, both men attempted to plead guilty to the crime of second-degree murder. The prosecutor advised the court that a grand jury would be asked to consider an indictment for first-degree murder, and the defendants' pleas were rejected. The grand jury subsequently indicted both Hatcher and Neumann for first-degree murder.

Neumann's trial began on May 4, 1976.[1] After completion of the state's case, Neumann took the stand on his own behalf and was questioned by defense counsel concerning his role in the robbery and homicide. Neumann was also extensively cross-examined on the discrepancies between his prior written confession and his testimony on direct examination. The next morning, the jury was sequestered, and defense counsel made the following statement:

"Your Honor, the record should reflect that we have spent the better part of the morning in Chambers reviewing testimony that was offered by the defense, and the Court has made a ruling on the admissibility of that evidence. On the basis of that and on the basis of well over an hour of discussion with Mr. Neumann by Mr. Hall and myself along with Mrs. Neumann and his brother Walter Neumann, and after carefully reviewing all of the evidence in this case and the current status of it and the evidence that has been presented against Mr. Neumann in the trial of this case, it is my understanding that at this point the defendant wishes to withdraw his pleas of not guilty to all three charges in the Indictment and enter pleas of guilty."

Neumann then exercised his right to withdraw his plea of not guilty and pleaded guilty to each of the charges against him, including the first-degree murder charge.[2] Following this interchange, counsel for the prosecution asked Neumann the questions required by Rule 15, Rules of Criminal Procedure. The substance of this questioning was repeated by Judge Crane Winton. Neumann steadfastly acknowledged his guilt and waived his right to a complete trial. He also stated that he understood the elements of the crime with which he was charged. The trial court accepted the guilty pleas and imposed the mandatory life sentence which Minn.St. 609.185 requires for first-degree murder.

1. Neumann's principal contention on appeal is that the trial court's acceptance of

---

1. Prior to the trial of Neumann, Hatcher had been found guilty by a jury of first-degree murder and had pleaded guilty to kidnapping and aggravated robbery.

2. Neumann received no concession or "bargain" from the prosecution in exchange for his plea.

his plea of guilty to first-degree murder lacked the necessary foundation in fact. In particular, it is argued that the existence of the critical element of premeditation was not supported by the evidence before the trial court.

■ It is well established that before a plea of guilty can be accepted, the trial judge must make certain that facts exist from which the defendant's guilt of the crime charged can be reasonably inferred. *State v. Taylor*, 288 Minn. 37, 178 N.W.2d 892 (1970); *State v. Johnson*, 279 Minn. 209, 156 N.W.2d 218 (1968); cf. *State v. Hoaglund*, 307 Minn. 322, 240 N.W.2d 4 (1976); see, generally, 5A Dunnell, Dig. (3 ed.) § 2441c. Thus, were it to appear that the evidence before the court below could not fairly have supported the inference that Neumann killed with premeditation, we would have no choice but to reject his guilty plea.

A similar situation was dealt with by this court in *State ex rel. Fruhrman v. Tahash*, 275 Minn. 242, 146 N.W.2d 174 (1966). In that case, defendant pleaded guilty to the first-degree murder of a gas station attendant and was convicted and sentenced to a prison term. Ten years later, a habeas corpus proceeding was begun in which the conviction was attacked on several grounds. Defendant appealed, arguing that his guilty plea should not have been accepted by the judge presiding at the original arraignment. Like Neumann, the defendant in *State rel. Fruhrman v. Tahash, supra*, contended that there was evidence on the record tending to negate the inference that the murder he committed was premeditated. This court rejected defendant's argument and stated (275 Minn. 249, 146 N.W.2d 179):

> " * * * [Defendant] stated in his confession that * * * 'I just didn't know what I was doing.' Asked how long he planned this holdup, he replied, 'I

didn't even plan it'; and asked how it happened, he replied, 'I don't know. I was just sitting there and all at once, I just did it'; * * * 'I just stood there and shot.'

> "Opposed to such testimony is the evidence that defendant actually fired at least five bullets into his victim's body, as well as statements relating to other factors which we have held sufficient to establish murder in the first degree. [Citation omitted.] Under our decisions, it is clear that premeditation and design, essential to establish murder in the first degree, being a product of the mind and wholly subjective, are often incapable of direct proof but may be inferred from the circumstances which surround a homicide, such as the fact the perpetrator has prepared himself with a loaded firearm, thereby being evidently ready to shoot, if necessary, anyone who might obstruct his criminal purpose, and the manner in which the shooting is accomplished. [Citation omitted.]

> "Defendant's assertions do not clearly and unequivocally indicate innocence of the crime charged. Compare, *State v. Olson*, 270 Minn. 329, 133 N.W.2d 489 [1965]."

■ As appears from the quotation, this court has adopted a rather expansive construction of the statutory definition of "premeditation."[3] Extensive planning and calculated deliberation need not be shown by the prosecution. The requisite "plan" to commit a first-degree murder can be formulated virtually instantaneously by a killer. See, *State v. Hare*, 278 Minn. 405, 154 N.W.2d 820 (1967);[4] *State v. Gowdy*, 262 Minn. 70, 113 N.W.2d 578 (1962). Moreover, as the quoted excerpt states, premeditation can be inferred from either the number of gunshots fired into a victim, *State v. Hare, supra*, or the fact that a killer arms himself

---

**3.** "Premeditation" is defined in Minn.St. 609.18 as follows: "For the purposes of sections 609.-185 [first-degree murder] and 609.19 [second-degree murder], 'premeditation' means to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission."

**4.** Other courts have construed statutory "premeditation" in a more restrictive fashion. E. g., see, *Austin v. United States*, 127 U.S.App. D.C. 180, 382 F.2d 129 (1967).

with a loaded gun in preparation for the commission of a lesser crime, *State v. Campbell*, 281 Minn. 1, 161 N.W.2d 47 (1968); *State v. Gowdy, supra.*

In the present case, there are two contradictory accounts of the homicide committed by Neumann. If only the version of the murder contained in Neumann's confession is considered, there is unquestionably ample support for a first-degree murder conviction. In light of our cases which have construed the premeditation requirement, four factors in this case are of particular significance: (1) Neumann and Hatcher executed the robbery with a loaded gun, thus permitting an inference of an intent "to shoot [and kill] anyone who obstruct[ed] the robbery." *State v. Campbell*, 281 Minn. 1, 13, 161 N.W.2d 47, 55. (2) Although it was initially Hatcher's idea to kill the attendant, Neumann agreed to this course of action before the killing was actually carried out. Neumann's assent to the killing easily satisfies the extremely short period of planning which this court has required for a finding of statutory premeditation. (3) Neumann shot the attendant six times in the head, neck, and back while the latter's hands were tied behind his back. One of the shots was fired with a pistol against the skin of the attendant's upper neck. As noted above, multiple gunshots are considered probative of premeditation. (4) Considered in its entirety, the procedure of tying the victim's hands behind his back, taking him into the woods, and shooting him six times bespeaks a plan to kill.

The other version of the murder, which Neumann related on the witness stand at trial, differentiates the present case from *State ex rel. Fruhrman v. Tahash, supra,* and underlies Neumann's claim that he did not kill the attendant with premeditation. Neumann's trial testimony paints a picture of intoxication and coercion. It is Neumann's position on appeal that because of

his alleged state of extreme intoxication he did not have the mental state which the term "premeditation" requires. Minn.St. 609.075 provides as follows:

"An act committed while in a state of voluntary intoxication is not criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

Although we have never decided the issue, courts in numerous other jurisdictions have recognized that a state of intoxication at the time of a killing may properly be considered in determining whether the accused acted with "premeditation." E. g., see, *People v. Garcia*, 398 Mich. 250, 247 N.W.2d 547 (1976); *Harris v. United States*, 375 A.2d 505 (D.C.App.1977); *Commonwealth v. Sires*, Mass., 350 N.E.2d 460 (1976); *People v. Horn*, 12 Cal.3d 290, 115 Cal.Rptr. 516, 524 P.2d 1300 (1974); *Commonwealth v. Reid*, 432 Pa. 319, 247 A.2d 783 (1968); *State v. Tansimore*, 3 N.J. 516, 71 A.2d 169 (1950). We find nothing in the language of § 609.075 or our previous decisions which would compel the adoption of a different rule in Minnesota.

Whether or not a defendant's condition of intoxication negates the existence of the culpable mental state required to convict him is, of course, a question to be answered by the trier of fact. It is clear, however, that the commission of an offense following alcoholic imbibement raises no presumption of any kind concerning the intoxication defense.[5] In the present case, the trial court's acceptance of Neumann's guilty plea, based on the evidence produced by both sides at trial, constituted an implicit finding that Neumann was not so intoxicated as to be unable to premeditate the

---

5. In *State v. Lund*, 277 Minn. 90, 92, 151 N.W.2d 769, 771 (1967), we said: "The mere fact of a person's drinking does not create a presumption of intoxication, and the possibility of intoxication does not create the presumption that a person is rendered incapable of intending to do a certain act. * * * It has never been held by this court that mere conjecture is grounds for overturning an otherwise valid and proper conviction, and this would especially be true where the conviction is based upon a person's fully informed, voluntary plea of guilty."

killing of the attendant.[6] The trial judge had heard Neumann's own testimony concerning his state of intoxication and apparently found it unconvincing as a defense to premeditated murder. The matter for determination here is thus whether the conclusion drawn by the trial court with respect to the intoxication defense is properly supported.

An initial question in our inquiry concerns the proper deference to be accorded the trial court's implicit factual conclusion. In the past, we have reviewed several cases in which the defense of intoxication had been rejected by the trier of fact below. See, *State v. Malzac*, Minn., 244 N.W.2d 258 (1976); *State v. Annis*, 308 Minn. 232, 241 N.W.2d 482 (1976); *State v. DeFoe*, 308 Minn. 436, 241 N.W.2d 635 (1976); *State v. Kolodge*, 293 Minn. 413, 196 N.W.2d 920 (1972); *State v. Carlson*, 291 Minn. 536, 192 N.W.2d 184 (1971). In each case the defendant appealed, arguing that the evidence failed to justify the factfinder's rejection of the defense. A fair reading of the cases as a group indicates that as long as the record contains sufficient evidence to support the conclusion reached by the finder of fact on the intoxication issue, this court will not reverse that conclusion despite the existence of some evidence to the contrary.

In the case before us, the viability of Neumann's intoxication defense rested squarely on the credibility of his own testimony at trial. That testimony was undeniably self-serving and was contradicted by the statement of confession given to the police by Neumann at a time when the events surrounding the murder were fresh in his mind. On these facts, the opportunity to observe Neumann's demeanor in order to gauge the credibility of his testimony was vital. Only the trial judge had that opportunity, and our reading of the tran-

script has revealed nothing which suggests that his conclusion was either unsupported by the evidence or manifestly contrary to the weight of the evidence.

We conclude that, contrary to Neumann's contention, the evidence heard by the trial court was more than adequately supportive of the guilty plea and would have sustained a jury's conviction. The acceptance of Neumann's plea was therefore not erroneous.

2. As a corollary to his first argument, Neumann suggests that it was improper for the trial court to have accepted his guilty plea without *personally* questioning him as to the factual basis of the crime charged. According to appellant, the judge should not have relied solely upon the evidence introduced during the partial trial to establish the factual basis for the plea. Undoubtedly, the standard practice calls for a judge to personally question a defendant at the time a guilty plea is entered; however, Neumann's interpretation of this point misconstrues the purpose of such questioning.

The primary responsibility of the court when a plea of guilty is made is to ensure that the plea was not coerced, that the defendant is fully apprised of the rights he desires to waive, and that there is a basis in fact for the defendant's plea. See, generally, 5A Dunnell, Dig. (3 ed.) § 2441c. In the present case, it is true that the trial judge did not question Neumann about the circumstances of the murder.[7] The important point, however, is that given the peculiar posture of the case at the time when the guilty plea was entered, such questioning would have been entirely superfluous. The judge was already fully informed of the factual basis for Neumann's plea. Neumann himself had testified for several hours on the preceding day and had been

6. The fact that Neumann claimed to have only sketchy recollections (due to his intoxication) of portions of the evening in question does not in itself render the acceptance of his guilty plea improper. See, *Pearson v. State*, 308 Minn. 287, 241 N.W.2d 490 (1976); *State ex rel. Crossley v. Tahash*, 263 Minn. 299, 116 N.W.2d

666 (1962); *State ex rel. Norgaard v. Tahash*, 261 Minn. 106, 110 N.W.2d 867 (1961).

7. Neumann was, however, questioned extensively by both the judge and the prosecutor concerning the nature and ramifications of his guilty plea.

extensively cross-examined by the prosecutor. In light of these circumstances, the presiding judge was no doubt considerably better informed of the facts supporting the plea than would be the case had he conducted the questioning himself.[8] For this reason, the judge's decision to accept the guilty plea based on the trial record rather than personal interrogation cannot be held to vitiate Neumann's plea.[9]

Finally, we find Neumann's reliance on the case of *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), misplaced. In *Alford*, the defendant proclaimed his innocence at the time of the entry of his plea. Here, Neumann, after consultation with counsel, renounced all claims of innocence and clearly stated he understood the nature of the charges against him.[10] This is best illustrated by quoting a portion of the dialogue between Neumann and the trial judge:

"BY THE COURT:

\*    \*    \*    \*    \*    \*

"Q  Are you satisfied that you have had an adequate opportunity to discuss this case and your situation with Mr. Holahan and with Mr. Hall?

"A  Yes.

"Q  Are you satisfied that you have had a chance to tell them everything that they ought to know about it in order to properly represent you here in court?

"A  Yes, I have.

"Q  Are you satisfied that they have represented you competently and faithfully in this case?

"A  Yes.

\*    \*    \*    \*    \*    \*

"Q  You do fully understand then that by entering your pleas of guilty to the three counts of the Grand Jury's Indictment you are giving up your right to a trial on those charges?

"A  Right.

"Q  Has anybody made any promises or made any threats or offered you any kind of an inducement to cause you to enter your plea of guilty here today?

"A  No.

"Q  You do so voluntarily?

"A  Yes, I do.

"Q  Do you do so because you acknowledge that you are indeed guilty of each of the three charges brought against you?

"A  Yes, I am.

"Q  I take it that over the past months that Mr. Holahan and Mr. Hall have gone over it in considerable lengths with you the elements of the crimes of which you are charged?

"A  Yes.

"Q  You are satisfied that you understand what those elements are?

"A  Yes.

"Q  You fully understand that under the law I as the Judge who presides over this trial have no alternative with respect to what penalty I must impose for murder in the first degree?

"A  Yes.

"Q  You realize that is imprisonment for the rest of your natural life?

"A  Yes."

The judgment of conviction for first-degree murder is affirmed.

Affirmed.

---

**8.** The Michigan Supreme Court has squarely held that a trial judge may base his acceptance of a guilty plea on the evidence introduced during a partial trial rather than on personal questioning of the defendant. *People v. Armstrong*, 390 Mich. 693, 213 N.W.2d 190 (1973); *People v. Kuchulan*, 390 Mich. 701, 213 N.W.2d 95 (1973); see, also, *People v. Schneff*, 392 Mich. 15, 219 N.W.2d 47 (1974).

**9.** It is worthy of note that this court has upheld the acceptance of a guilty plea even though the trial judge failed to specifically question the defendant on the critical element of intent, where such acceptance was adequately supported by other facts and circumstances. See, *State v. Russell*, 306 Minn. 274, 236 N.W.2d 612 (1975); *State v. Hopkins*, 293 Minn. 522, 198 N.W.2d 542 (1972).

**10.** Cf. *State v. Olson*, 270 Minn. 329, 133 N.W.2d 489 (1965).