*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0372**

State of Minnesota,
Respondent,

vs.

Nicholas Taylor Rod,
Appellant.

**Filed February 1, 2016
Affirmed
Schellhas, Judge**

Ramsey County District Court
File No. 62SU-CR-14-2906

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Erickson, Jr., Roseville City Prosecutor, Erickson, Bell, Beckman & Quinn, P.A., Roseville, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Schellhas, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges his conviction of causing demonstrable bodily harm to a public safety dog, arguing that his guilty plea was not supported by an adequate factual basis. We affirm.

**FACTS**

In early July 2014, Roseville police officers went to an area motel to arrest appellant Nicholas Taylor Rod on an active felony warrant. Rod ignored officers' repeated commands to exit his motel room, so an officer deployed a public safety dog, which "push[ed] into the room and began apprehending Rod." Soon thereafter officers entered the room and saw Rod choking the dog. Officers freed the dog only after subduing and detaining Rod.

On August 8, 2014, respondent State of Minnesota charged Rod with gross misdemeanor causing demonstrable bodily harm to a public safety dog and with misdemeanor assault of a public safety dog. On September 9, for an unrelated felony conviction, a district court sentenced Rod to 69 months' imprisonment. On October 16, while incarcerated for the felony offense, Rod wrote to the district court that presided over this case and asked to "take care of" the August 8 charges "by way of 'writ' or any other means."

On October 27, 2014, the Roseville city prosecutor provided Rod a plea petition and waiver of the right to be present and instructed him, "If you agree with the conditions set forth in the plea petition, please sign the enclosed documents in front of a notary public

2

and forward them to" the district court. The petition recited the elements of causing demonstrable bodily harm to a public safety dog and described a plea agreement under which Rod would plead guilty to that offense, the state would dismiss the charge of assault of a public safety dog, and Rod would receive an executed 365-day sentence to be served concurrently with his prison sentence for the unrelated felony conviction. On November 3, Rod sent the notarized petition and waiver to the district court.

On November 13, 2014, the district court issued a writ of habeas corpus ad prosequendum and order for transportation of Rod to the court. Rod therefore was transported to the court, where he pleaded guilty to causing demonstrable bodily harm to a public safety dog; the state dismissed the charge of assault of a public safety dog; and the court adjudicated Rod guilty and imposed an executed 365-day sentence to be served concurrently with his prison sentence for the unrelated felony conviction.

This appeal follows.

## DECISION

"A defendant who wishes to overturn a guilty plea may file a petition for postconviction relief . . . , move to withdraw the plea under Rule 15.05 of the Minnesota Rules of Criminal Procedure, or seek withdrawal on a direct appeal from the judgment of conviction." *State v. Miller*, 849 N.W.2d 94, 97 (Minn. App. 2014); *see also Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989) (stating that "[a] defendant is free to simply appeal directly from a judgment of conviction and contend that the record made at the time the plea was entered is inadequate in one or more . . . respects"). "The defendant bears the burden to establish that his plea was invalid. Whether a plea is valid is a question of law

3

which [appellate courts] review de novo." *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012) (*Lussier I*) (citation omitted).

"Among other requirements, a constitutionally valid guilty plea must be accurate." *Id.* "To be accurate, a plea must be established on a proper factual basis." *Id.* (quotation omitted). "When determining whether a guilty plea has an adequate factual basis, [appellate courts] examine whether there are sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *Lussier v. State*, 853 N.W.2d 149, 154 (Minn. 2014) (*Lussier II*) (emphasis omitted) (quotation omitted). "The district court typically establishes a factual basis by asking the defendant to express in his own words what happened." *Barrow v. State*, 862 N.W.2d 686, 691 (Minn. 2015); *see also* Minn. R. Crim. P. 15.02, subd. 2 ("After explaining the defendant's rights, the judge, with the assistance of counsel, must question the defendant to determine a factual basis for all elements of the offense to which the defendant is pleading guilty."). "Nevertheless, even if a district court does not elicit proper responses, a defendant may not withdraw his plea if the record contains sufficient evidence to support the conviction." *Lussier I*, 821 N.W.2d at 589 (quotations omitted).

"[The supreme court] ha[s] never required that the factual basis for the plea appear in the plea hearing transcript verbatim." *Id.* "Indeed, the plea petition and colloquy may be supplemented by other evidence to establish the factual basis for a plea." *Id.* In evaluating the adequacy of the factual basis for a guilty plea, the supreme court has considered record contents including an off-duty police officer's sworn complaint, *State v. Warren*, 419 N.W.2d 795, 799 (Minn. 1988); "the allegations contained in the complaint" and "pictures

of the victim's injuries," *State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983); "sworn statements and testimony of the victims introduced at earlier hearings," *Burnell v. State*, 287 N.W.2d 412, 413 (Minn. 1979); "[t]he state's evidence, as summarized by the prosecutor" at the plea hearing, *Kochevar v. State*, 281 N.W.2d 680, 684, 686 (Minn. 1979); evidence introduced during partial trial, *State v. Neumann*, 262 N.W.2d 426, 432–33 (Minn. 1978), *abrogated on other grounds by State v. Moore*, 481 N.W.2d 355 (Minn. 1992); and a detective's sworn complaint, a presentence-investigation report (PSI), and the defendant's Department of Corrections file, *State v. Hoaglund*, 307 Minn. 322, 326–27 & n.9, 240 N.W.2d 4, 6 & n.9 (1976). On factual-basis review, this court has considered the undisputed allegations in the complaint, *Sanchez v. State*, 868 N.W.2d 282, 289 (Minn. App. 2015), *review granted* (Minn. Oct. 28, 2015); an insurance inventory of damaged property, *Barnslater v. State*, 805 N.W.2d 910, 914–15 (Minn. App. 2011); and a notice of driver's-license revocation and a traffic citation, *State v. Sandmoen*, 390 N.W.2d 419, 422 (Minn. App. 1986).

Furthermore, the factual basis for a guilty plea may include reasonable inferences arising from the defendant's admissions and other record contents. *See State v. Russell*, 306 Minn. 274, 275, 236 N.W.2d 612, 613 (1975) (concluding that "[d]efendant's answers to questions by the prosecutor in this case disclose a factual basis for the plea [of guilt of second-degree intentional murder] even though no question was specifically directed to the element of intent to kill"); *State v. Hopkins*, 293 Minn. 522, 523, 198 N.W.2d 542, 542 (1972) (concluding that "[defendant's] answers to questions by the prosecutor disclose a factual basis for the plea [of guilt of aggravated assault] even though no question was

5

specifically directed to the element of intent"); *Barnslater*, 805 N.W.2d at 914–15 (concluding that adequate factual basis supported guilty plea to first-degree burglary, reasoning in part that defendant's intent to damage property—an element of the predicate offense—could be inferred from his admission that he "thr[e]w some stuff around" in manner that could have caused damage (quotation omitted)); *State v. Petersen*, 799 N.W.2d 653, 658 (Minn. App. 2011) (concluding that adequate factual basis supported guilty plea to second-degree intentional murder, reasoning in part that defendant's intent to kill "a child born alive" could be inferred from his admission that he punched pregnant woman in stomach with intent to kill fetus), *review denied* (Minn. Sept. 28, 2011); *cf. Neumann*, 262 N.W.2d at 430 ("It is well established that before a plea of guilty can be accepted, the trial judge must make certain that facts exist from which the defendant's guilt of the crime charged can be *reasonably inferred*." (emphasis added)).

In this case, Rod pleaded guilty to causing demonstrable bodily harm to a public safety dog. The relevant statute provides:

> It is a gross misdemeanor for any person to intentionally and without justification cause demonstrable bodily harm to a police dog, search and rescue dog, or an arson dog when the dog is involved in law enforcement, fire, or correctional investigation or apprehension, search and rescue duties, or the dog is in the custody of or under the control of a peace officer, a trained handler, or an employee of a correctional facility.

Minn. Stat. § 609.596, subd. 2 (2012). "[D]emonstrable" means "[c]apable of being demonstrated or proved" or "[o]bvious or apparent." *The American Heritage Dictionary of the English Language* 484 (4th ed. 2006); *see also State v. Backus*, 358 N.W.2d 93, 95 (Minn. App. 1984) (concluding that "definition given by the trial court adequately defined

6

'demonstrable' as capable of being perceived by a person other than the victim" in case involving statute criminalizing infliction of "demonstrable bodily harm" on peace officer (quotation omitted)); *cf.* 10A *Minnesota Practice*, CRIMJIG 24.19 (Supp. 2012) (stating that, as element of causing demonstrable bodily harm to a public safety dog, "'[d]emonstrable bodily harm' means bodily harm that is capable of being perceived by a person other than the victim").

Rod challenges the adequacy of the factual basis for his guilty plea. The following colloquy took place at his plea hearing:

> PROSECUTOR: . . . Sir, I'm going to direct your attention to July 3rd, 2014 in the city of Roseville, Ramsey County. Is it true, sir, that on that date you were present at the Motel 6?
> ROD: Yes.
> PROSECUTOR: Would you agree, sir, that you came into contact with a police officer after they were attempting to execute a felony warrant for your arrest?
> ROD: Yes.
> PROSECUTOR: And in the process of coming into contact with the police officer, the police officer arrived at the motel with a [police dog]. Is that correct?
> ROD: Yes.
> PROSECUTOR: And the police officer attempted to enter your room with the dog. Is that correct?
> ROD: Yes.
> PROSECUTOR: And, sir, in the process of attempting to enter your room, the dog partially was in the room but the police officer wasn't in the room. Is that correct?
> ROD: Yes.
> PROSECUTOR: And, sir, at some point you attempted—or excuse me. At some point you were alone with the dog and you were attempting to choke the dog with the dog's leash. Is that true?
> ROD: Yes.
> PROSECUTOR: And, sir, you were intentionally trying to cause harm to the dog. Is that correct?
> ROD: Yes.

PROSECUTOR: And you knew it was a police dog?
ROD: Yes.

Rod expressly admitted every element of causing demonstrable bodily harm to a public safety dog except the element of demonstrable bodily harm itself. Rod argues that because "[he] never admitted to *actually* causing the dog demonstrable bodily harm, and the state failed to present any evidence of the same," his guilty plea was not supported by an adequate factual basis and "manifest justice compels this Court to allow him to withdraw it." We disagree.

Rod fails to address the fact that he provided to the district court a notarized plea petition prior to the plea hearing. In his petition, Rod stated that

> I am pleading guilty because on July 3, 2014 in the City of Roseville, County of Ramsey, State of Minnesota I committed the following acts . . . : Intentionally and without justification cause demonstrable bodily harm to a police dog, search and rescue dog, or an arson dog when the dog is involved in law enforcement, fire, or correctional investigation or apprehension, search and rescue duties, or the dog is in the custody of or under the control of a peace officer, a trained handler, or an employee of a correctional facility.

When asked by the court whether he "underst[oo]d every word" of the petition, Rod responded affirmatively. The petition is part of the record, and we may consider it in our de novo evaluation of the adequacy of the factual basis for Rod's plea. *See Lussier I*, 821 N.W.2d at 589 (stating that "a defendant may not withdraw his plea if the record contains sufficient evidence to support the conviction"). The record also contains the complaint, the probable-cause portion of which alleges as follows:

> Rod attempted to slam the door shut on the [dog] striking the dog on the neck and shoulder area. [The dog] was able to push

into the room and began apprehending Rod. Rod continued to push the door shut and the door closed behind [the dog] trapping the leash in the door and preventing the officers from entering along with the [dog]. Officers used the management key and entered the room. Officers observed Rod had a hold of the [dog's] leash and Rod was wrapping the leash around [the dog's] neck as [the dog] held Rod by his upper right thigh. Rod was attempting to choke [the dog] with his own leash. Rod ignored officers' commands and attempted to choke [the dog] with his bare hands. . . .

[The dog] sustained demonstrable bodily harm in the nature of broken blood vessels (petechial hemorrhaging) in both of his eyes after being choked by Rod.

On this record, a fact-finder reasonably could infer that Rod's admitted use of violence against the dog—with the admitted intent to cause bodily harm to the dog—led to bodily harm to the dog that was capable of being perceived by a human observer of the dog.

**Affirmed.**