STATE of Minnesota, Respondent,

v.

Sammie Lamont JOHNSON, Appellant.

No. C3–99–1351.

Supreme Court of Minnesota.

Sept. 7, 2000.

John M. Stuart, Minnesota Public Defender, Ann McCaughan, Assistant Public Defender, Minneapolis, for appellant.

Michael A. Hatch, State Attorney General, St. Paul, Amy Klobuchar, Hennepin County Attorney, Mary M. Lynch, Minneapolis, for respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

We review appellant Sammie Lamont Johnson's convictions and sentences for the crimes of first-degree premeditated murder, Minn.Stat. § 609.185(1) (1998), and first-degree felony-murder during the commission of an aggravated robbery, Minn.Stat. § 609.185(3) (1998). On appeal, Johnson argues that the state's peremptory strike of an African American woman from the venire constituted purposeful racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Johnson also argues that the evidence was insufficient to support the convictions and that he is entitled to a new trial because the prosecutor committed misconduct during closing argument. Johnson also argues that the trial court erred by entering two judgments of conviction and by imposing concurrent life sentences for the same conduct. We affirm, but vacate Johnson's judgment of conviction and sentence for first-degree murder committed during the course of an attempted aggravated robbery.

Agnes and Robert Fernlund spent the evening of October 27, 1998, playing cards with friends and returned to their Minneapolis home on 43rd Avenue South at approximately 11:45 p.m. Mr. Fernlund parked the car in front of their home and affixed a security device to the steering wheel while Mrs. Fernlund got out of the car. As she walked up the sidewalk toward their home she saw three men approach her husband from across the street. She heard one of the men ask for the time and Mr. Fernlund reply that it was a quarter to twelve. She continued walking and then heard a loud "pop." She turned to see Mr. Fernlund lying in the street by the front of the car and the three men running away. She went into the house and called 911. Minutes later, paramedics arrived and discovered a gunshot wound in the upper right side of Mr. Fernlund's back. He was pronounced dead at the scene.

Mrs. Fernlund was unable to describe the three men who approached her husband. However, neighbors were able to provide the police with some information. One neighbor heard a loud pop and then heard loud voices and laughter. Another neighbor heard a gunshot, footsteps, the sound of car doors slamming and an engine starting and then saw a white Ford Explorer-type vehicle with tinted windows speed down the alley. Police found a shoe print in a yard across the street from the Fernlund home pointing in the direction of the alley and a tire track in the alley. No other evidence was recovered from the scene, and the casing from the bullet that killed Mr. Fernlund was never found.

The three men who approached Mr. Fernlund were Ernest Howard, Robert Neely and Johnson. Neely entered into a plea agreement with the state. In return for his promise to testify truthfully in any prosecution related to the Fernlund murder, Neely was permitted to plead guilty to second-degree unintentional murder for which he received a 12–year sentence. Neely testified at trial that on the day of the shooting he and Johnson met unexpectedly at a bus stop and that Johnson told him that he had a gun. Neely saw the gun's loaded magazine. They went to the house of Johnson's girlfriend who testified that she saw the gun and magazine in Neely's pants. Neely testified that Johnson had given him the magazine to hold briefly.

After Johnson and Neely left the house, Neely testified that Johnson fired the gun in the air and it jammed. Johnson removed the jammed bullet and placed the gun and bullet under some wood in the space between two garages. The two went to a convenience store and then retrieved the gun. Johnson again hid the gun, this time in a lawnmower bag in the garage of his friend, Kenny Pritchard. The two went back to the store where they saw Howard, Johnson's friend, putting gas in a white Mercury Mountaineer at a gas station across the street. Johnson and Neely approached Howard and Johnson brought up the idea of doing a "jack," robbing someone, and the men agreed. The three drove back to Pritchard's house and retrieved the gun. Howard wrapped the gun in paper and placed it in a compartment in the back of the vehicle's passenger seats. The men drove around for about 20 minutes smoking marijuana before they saw the Fernlunds. Johnson said, "let's get them" and Howard stopped the vehicle in an alley. Neely took the gun, with magazine attached, out of the compartment and gave it to Johnson.

The three men approached the Fernlunds. Mr. Fernlund was closing his door when Johnson asked him for the time. When Mr. Fernlund answered, Johnson pulled out the gun and told Mr. Fernlund to give him his money. Howard also told him to "give up the money." Mr. Fernlund turned and took about two steps when Johnson shot him in the back. Neely testified that Johnson squeezed the trigger once, then "tried it again but the gun got jammed." No one took anything from Mr. Fernlund, instead the men ran back to the Mountaineer. Neely put the gun back in the compartment and Howard drove Neely and Johnson back to Pritchard's house.

Johnson took the casing out of the gun and buried it in the dirt in Pritchard's yard.[1] He then put the gun back in the lawnmower bag. Johnson and Neely went upstairs to Pritchard's bedroom and awakened him. Neely heard Johnson telling Pritchard about the incident, but was not sure what was said. The two slept at Pritchard's house and in the morning stole a car and drove to St. Cloud. They spent that night in St. Cloud and the following morning stole another car and drove back to Minneapolis.

A few days after the murder, Johnson was shot with a .22-caliber weapon that was similar in class and rifling characteristics to the gun used to shoot Mr. Fernlund. The bullet recovered from Mr. Fernlund also was consistent in general characteristics with the bullet removed from Johnson, but the two bullets had no matching individual characteristics. Johnson gave police several different versions of the shooting, none of which corresponded to the ballistics evidence that he was shot at a distance of three feet or less. After he was arrested, Johnson accused Neely of trying to cover up the Fernlund murder by shooting him or having him shot. Johnson maintained that he was shot from a range of 15 to 20 feet. The police concluded that Johnson shot himself.

When police questioned Johnson about the Fernlund murder, Johnson admitted that he was present in front of Fernlund's home before the shooting but claimed that Neely had the gun and shot Fernlund. Johnson claimed that he was running down the block when he heard the shot. Johnson maintained that Howard parked the vehicle in the street, not the alley, and that the three men did not walk through the neighbor's yard. However, the shoe print found in the neighbor's yard matched unique characteristics created by a small rock lodged in the sole of one of Johnson's shoes and the tire track found in the alley matched unique characteristics of a tire on the white Mercury Mountaineer that Howard was driving.

Johnson was charged and convicted of first-degree premeditated murder and

---

1. Pritchard's yard was searched twice with a metal detector but the casing was not found.

first-degree felony-murder during the commission of an aggravated robbery. In his brief to this court Johnson concedes that the evidence was sufficient to convict him of aiding and abetting second-degree felony murder under Minn.Stat. § 609.19, subd. 2(1) (1998) ("causes the death of a human being, without intent to effect the death of another person, while committing or attempting to commit a felony offense * * * ").

## I.

■ We first consider Johnson's argument that the trial court erred by allowing the state to use a peremptory challenge to remove an African–American woman from the venire. The Equal Protection Clause of the United States Constitution prohibits the use of a peremptory challenge to exclude a person from jury service solely on the basis of the person's race. *See Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ In *Batson*, the United States Supreme Court established a three-step process to determine whether a peremptory challenge is motivated by a prohibited discriminatory intent. *See Batson*, 476 U.S. at 96, 106 S.Ct. 1712. The defendant first must make a prima facie showing that the challenge was exercised on the basis of race. *See id.* Once a prima facie showing has been made, the burden then shifts to the prosecutor to articulate a race-neutral reason for the challenge. *See id.* at 97, 106 S.Ct. 1712. Finally, the trial court must then determine whether there has been purposeful discrimination. *See id.* at 98, 106 S.Ct. 1712; *State v. Gaitan*, 536 N.W.2d 11, 15–16 (Minn.1995). Appellate courts give considerable deference to the trial court's finding on the issue of the prosecutor's intent, however, because the trial court's finding typically turns largely on its evaluation of credibility. *See Her-*

*nandez v. New York*, 500 U.S. 352, 366–69, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

■ While the prosecutor argued at trial that Johnson failed to make a prima facie showing that the peremptory challenge was motivated by discriminatory intent, she then proceeded to provide race-neutral reasons for the challenge. Under this circumstance we do not review the adequacy of Johnson's prima facie case. Instead, we focus upon the reason offered by the prosecutor for the challenge and whether the trial court abused its considerable discretion in its determination that the prosecutor did not engage in purposeful discrimination. *See State v. Scott*, 493 N.W.2d 546, 548–49 (Minn.1992).

The prosecutor offered various race-neutral reasons for exercising a peremptory challenge to the juror. She expressed concern that (1) the juror, who worked with youth between the ages of 15 and 18 through the Urban League, would over-identify with Johnson, who was 17; (2) that hours before the murder Johnson was at the South Minneapolis Boys and Girls Club where the juror's cousin[2] was an administrator; the juror was an active member of the North Minneapolis Boys and Girls Club and occasionally assisted her cousin with programs for the South Minneapolis club; potential witnesses were active members of the South Minneapolis club; and Johnson's girlfriend lived near the South Minneapolis club; (3) the juror had been falsely accused of stealing from an employer and the prosecutor was concerned that she would have an agenda to "ferret out false accusations"; (4) the juror had a conflicted attitude toward the police; (5) the juror had expressed concern over how the community would react to the verdict; and (6) the juror had expressed discomfort with the idea of sitting in judgment of another. The prosecutor stated:

> I'm reluctant to challenge her because she's the only African–American juror

---

**2.** The prosecutor erred in describing the juror's relative as a brother rather than a cousin. However, defense counsel made the same mistake and did not correct the prosecutor or the judge.

on the panel, but \* \* \* in the final analysis what I have to ask myself is would I challenge this juror if she were a white juror, and the answer is unequivocally yes. \* \* \* I'm saying that no matter what race this juror was she would be challengeable by the State for those reasons.

█ The trial court did not analyze all of the reasons offered by the prosecutor, but found some unpersuasive. The trial court found, however, that the juror's experience of being falsely accused of stealing and the juror's connection with potential witnesses from the South Minneapolis Boys and Girls Club legitimately would cause a prosecutor concern and that the prosecutor had not engaged in purposeful discrimination. The trial court rejected the *Batson* challenge and allowed the peremptory challenge. We conclude that the trial court did not abuse its discretion in finding the prosecutor's denial of discriminatory intent credible and in sustaining the challenge.

## II.

▮ Johnson next argues that there is insufficient evidence that he acted with premeditation and intent and, specifically, that the accomplice testimony of Robert Neely is not sufficiently corroborated to sustain the convictions. We view the evidence in a light most favorable to the verdict mindful that to successfully challenge a conviction based upon circumstantial evidence, the defendant must point to evidence within the record that is consistent with a rational theory other than guilt. *See State v. Ostrem*, 535 N.W.2d 916, 923 (Minn.1995); *State v. Andrews*, 388 N.W.2d 723, 729 (Minn.1986).

Johnson's claimed rational theory is that the shooter, whoever he was, panicked when Mr. Fernlund resisted and shot him as a rash impulse rather than a premeditated act. No evidence in the record, however, supports that Mr. Fernlund resisted the assault. He simply turned around and began to flee. The fact that Fernlund was shot squarely in the upper back suggests that the shooter was aiming at him. Johnson laughed as he fled and he later appeared happy as he told Pritchard that "we" shot someone. Indeed, Johnson cites to no evidence in the record consistent with the "rash impulse" theory.

 Circumstantial evidence must lead a rational trier of fact to conclude that the defendant is guilty, (*see State v. Anderson*, 379 N.W.2d 70, 75 (Minn.1985)), and, as applied in this case, to conclude that Johnson acted with premeditation. Premeditation and intent are states of mind.[3] A state of mind generally is proved circumstantially, by inference from words and acts of the actor both before and after the incident. *See Andrews*, 388 N.W.2d at 728. A jury is permitted to infer that a person intends the natural and probable consequences of their actions. *See State v. Cooper*, 561 N.W.2d 175, 180 (Minn.1997).

 So we review Johnson's actions. Johnson and his two companions set out in a vehicle with a loaded gun with the admitted intent of "jacking" or robbing someone. After spotting the Fernlunds driving up in front of their home, Johnson said, "Let's get them." Howard stopped the vehicle in a nearby alley, presumably to avoid detection. Neely retrieved the loaded gun from the back seat and gave it to Johnson, presumably so they could use it in the robbery. Taking the evidence in the light most favorable to the verdict, Johnson shot Fernlund in the back and then attempted to shoot him again but the gun jammed. While fleeing, Johnson laughed, which is inconsistent with having acted on a "rash impulse" that arguably should lead to quick regret. Viewing the evidence in a

---

3. To premeditate is "to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission." Minn. Stat. § 609.18 (1998). Intent means that the actor "either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn.Stat. 609.02, subd. 9(4) (1998).

light most favorable to the verdict, we conclude that there was sufficient evidence that Johnson acted with premeditation and with intent to kill Mr. Fernlund to sustain the conviction for first-degree premeditated murder.

 Because the evidence described rests in large part on the testimony of an accomplice, however, we must find corroboration by other evidence that tends to convict the defendant of the crime. *See* Minn.Stat. § 634.04 (1998).[4] Evidence that merely shows the commission of the crime or the circumstances thereof is not sufficient to corroborate accomplice testimony. *See id.* Corroborating evidence, which may be direct or circumstantial, is viewed in a light most favorable to the verdict and, while it need not establish a prima facie case of the defendant's guilt, it must point to defendant's guilt in some substantial way. *See State v. Adams,* 295 N.W.2d 527, 533 (Minn.1980).

 Johnson admitted that he was there when Mr. Fernlund was shot. Neely testified that the three men approached Mr. Fernlund, one asking for the time, just as Mrs. Fernlund testified. Neely testified that Mr. Fernlund was shot in the back; the physical evidence demonstrates that he was. Neely testified that Mr. Fernlund was trying to run when shot; the position of Mr. Fernlund's body and the position of the slippers he was wearing suggest that he attempted to flee before he was shot. Neely testified that Johnson attempted to fire another shot but the gun jammed; no casings were found at the crime scene consistent with the gun having jammed. This physical evidence therefore corroborates Neely's testimony.

In addition, Neely testified that Johnson laughed after shooting Mr. Fernlund; a neighbor heard laughter after the shot was fired. Neely testified that they fled down an alley in a white Mercury Mountaineer;

a neighbor identified a white similarly designed vehicle speeding down the alley after the shot was fired, and a tire track in the alley matched a tire on Howard's Mountaineer. Neely testified that Johnson hid the gun in Pritchard's garage; Pritchard testified that Johnson told him that he hid a gun in Pritchard's garage. Neely testified that Johnson laughed after the shooting and appeared happy; Pritchard testified Johnson appeared happy when he arrived at Pritchard's house on the night of the shooting. Neely described where and when he and Johnson stole cars to get to and from St. Cloud after the shooting; the owners of the stolen vehicles confirmed that the cars were stolen at approximately the time Neely indicated and from the locations that Neely identified. Finally, Neely testified that Johnson was the shooter; Pritchard testified Johnson told him "we" shot someone; and a few days later Johnson suffered a likely self-inflicted gunshot from a gun and with a bullet similar to that used on Mr. Fernlund. From our review of the evidence, we conclude that Neely's testimony was sufficiently corroborated by the physical and other testimonial evidence, and points to Johnson's guilt in a substantial way. *See Adams,* 295 N.W.2d at 533.

Finding Neely's accomplice testimony sufficiently corroborated, and viewing the evidence in a light most favorable to the verdict, we conclude that there was sufficient evidence that Johnson acted with premeditation and intent.

## III.

 Johnson also argues that he should be granted a new trial because of prosecutorial misconduct during final argument. We will reverse the district court's finding on this issue only when the misconduct, considered in the context of the trial as a whole, was so serious and prejudicial

4. Minnesota Statutes § 634.04 provides that "[a] conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

that the defendant's constitutional right to a fair trial was impaired. *See* State v. *Robinson,* 604 N.W.2d 355, 361 (Minn. 2000); *State* v. *Voorhees,* 596 N.W.2d 241, 253 (Minn.1999). With respect to claims of prosecutorial misconduct arising out of closing argument, we consider the closing argument as a whole rather than focus on particular "phrases or remarks that may be taken out of context or given undue prominence." *State v. Walsh,* 495 N.W.2d 602, 607 (Minn.1993) (citing *State v. Booker,* 348 N.W.2d 753, 755 (Minn.1984)).

 Johnson first contends that in closing argument the prosecutor argued facts not in evidence in an attempt to corroborate Neely's claim that he was not the shooter when the prosecutor recounted information provided to police by an anonymous informant:

> And then they got a break, and the break was that somebody who knew Robert Neely and who had talked to Robert Neely called Crime Stoppers and said I know someone who was present during the shooting, *not the shooter,* but I know somebody that was present and this is what I know about that.

(emphasis added). In fact there was *no* evidence that the anonymous caller to Crime Stoppers said that Neely was not the shooter.[5] The caller simply informed Crime Stoppers that he had information that Neely was involved in the crime and with whom he was involved.

 Johnson did not object to the prosecutor's alleged mischaracterization of evidence. Generally speaking a defendant is deemed to have waived a later challenge to the prosecutor's final argument by not objecting. *See State v. Ives,* 568 N.W.2d

710, 713 (Minn.1997). We can, however, reverse a conviction even when the defendant failed to object if the prosecutor's comment is unduly prejudicial. *See State v. Parker,* 353 N.W.2d 122, 127–28 (Minn. 1984).

 Throughout this trial the jury's attention was directed to the identity of the shooter. Neely consistently testified that he was not the shooter, and there was evidence that he told others that he was not the shooter. A prosecutor is permitted to argue reasonable inferences from the facts presented, *see State v. Porter,* 526 N.W.2d 359, 363 (Minn.1995), and a reasonable inference from the evidence is that Neely was the person that the caller identified and claimed was not the shooter.

Furthermore, the jury was properly instructed that:

> [T]he arguments or other remarks of the attorney are not evidence in this case. If the attorneys have made or if I [the judge] have made or should make any statement as to what the evidence is which differs from your recollection of the evidence then you should disregard the statement and rely solely upon your own memory.

Given this instruction, and the fact that the jury repeatedly heard Neely claim that he was not the shooter, any error in the prosecutor's statement was not unduly prejudicial.

 Johnson next argues that in closing argument the prosecutor improperly used hearsay statements that came in through the testimony of Sergeant Green suggesting that Neely told a cousin, Coshay Murray, that the gun jammed. John-

---

5. At trial, Johnson objected to Sergeant Green's testimony regarding the anonymous informant's statement. The trial court overruled Johnson's objection and while Green did not testify that the informant told him Neely said he wasn't the shooter, he did testify to the statements the anonymous caller made. Johnson did not renew his objection to this testimony on appeal. Therefore, any error is waived. However, trial courts should

be mindful of our repeated admonishments regarding the impropriety of admitting hearsay statements through the testimony of officers as evidence of why an investigation focused on the defendant. We have held that such statements should not be admitted because of their inherently prejudicial nature. *See State v. Williams,* 525 N.W.2d 538, 544 (Minn.1994); *State v. Cermak,* 365 N.W.2d 243, 247 (Minn.1985).

son claims that this statement is significant because the state relied on the gun jamming to establish that the shooter intended to shoot the victim a second time and therefore, premeditated the act. The prosecutor stated:

> Members of the jury, I was saying that Coshay Murray is also a cousin of Mr. Neely, and you recall the exchange that occurred between the defense attorney and Mr. – and Sergeant Green about whether or not Robert had said that the gun had previously jammed.
>
> Sergeant Green had testified in front of the grand jury that Robert had said to him – Robert or Ernest had said to him that the gun had jammed during the shooting, and you'll recall that [defense counsel] spent a fair amount of time suggesting to Sergeant Green that he was wrong about that point. When I talked to Sergeant Green, I asked him if in fact a statement had been taken from Coshay Murray, a cousin of Robert Neely, and Sergeant Green told you that yes, of course his statement has been taken, and in fact the defendant – or Mr. Neely previously said that when the defendant was firing the gun that the gun had jammed during the course of the murder.

The prosecutor then moved on to another point. On redirect examination, Sergeant Green had admitted that Coshay Murray's statement appeared only in a report prepared by another police officer, and was not given to Sergeant Green personally as he had testified before the grand jury. Therefore, the content of Coshay Murray's statement regarding what Neely said was not offered for its truth, but to rehabilitate Sergeant Green.

However, for the purpose of showing that Neely actually made this statement, or that he was truthful, these statements are hearsay and do not satisfy any of the exceptions under Minn. R. Evid. 803. In evaluating claims of prosecutorial misconduct we have looked to the American Bar Association Standards for Criminal Justice

as a model. *See State v. Salitros*, 499 N.W.2d 815, 817–18 (Minn.1993). The ABA Standards provide that it is unprofessional conduct for a prosecutor to "knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to * * * make other impermissible comments or arguments * * * " American Bar Association Standards for Criminal Justice, Standard 3–5.6(b)(2nd ed.1980). The state argues that the evidence had been admitted and that the comments were simply an appropriate attempt to highlight testimony relevant to Green's credibility. However, the statements were not admissible to show that Neely was credible, which, given the particular phrasing used, is how the jury likely interpreted the prosecutor's comment.

When evidence admissible for one purpose but not for another is admitted, the court upon request must instruct the jury that the evidence is limited to its proper purpose. *See* Minn. R. Evid. 105. Accordingly, Johnson could have sought an instruction that may have avoided the prejudice he now alleges. Although there was discussion among the judge and counsel at the bench regarding the prosecutor's statement during closing argument, Johnson does not claim that he requested a limiting instruction from the court. In this context we have difficulty finding that the comment was so serious and prejudicial that Johnson's right to a fair trial was denied. *Cf. Parker*, 353 N.W.2d at 128 (noting failure to object to prosecutor's statements implies that comments were not prejudicial).

■ Moreover, the prosecutor's comment must be taken in the context of the closing argument as a whole. *See Walsh*, 495 N.W.2d at 607. The prosecution closing argument spans 75 pages of trial transcript. While evidence of the gun jamming was important to the state's case, the prosecutor argued to the jury that the strongest evidence of premeditation was the fact that the victim was shot in the back. The prosecutor did not emphasize

Green's hearsay testimony and that testimony in no way provided a theme. *See State v. Lewis*, 547 N.W.2d 360, 364 (Minn. 1996) (holding that no prosecutorial misconduct where alleged error constituted a small portion of oral argument and did not characterize the entire argument). In addition, the jury heard other evidence that arguably corroborated Neely's testimony that the gun jammed – from a ballistics expert who testified that the type of gun used was prone to jamming, and from the absence of any casing found at the scene, which also suggests the gun may have jammed. As we view not only the closing argument but the record as a whole, the prosecutor's statement was not prejudicial.

Johnson also claims that in closing argument the prosecutor mischaracterized certain testimony. We have reviewed the transcript of the testimony at issue and are confident that the prosecutor either did not mischaracterize the testimony or argued only reasonable inferences from the testimony. *See Porter*, 526 N.W.2d at 363. Therefore, there was no misconduct in this respect.

■ Finally, Johnson argues that the prosecutor's statements regarding his having been shot and his defense requiring the jury to believe in "coincidences" improperly denigrated his defense. It is misconduct for the prosecutor to call a *type* of defense "soddy," *see State v. Kirvelay*, 311 Minn. 201, 248 N.W.2d 310, 311 (1976), or to suggest that the jurors would be "suckers" if they believed the defense, *see Porter*, 526 N.W.2d at 364. In this case the prosecutor was highlighting evidence that the state believed made the defense implausible. As such, it was properly focused on "references to the evidence rather than to matters * * * which serve to divert the minds of the jurors from facts to which their consideration should be given* * *." *State v. Perry*, 274 Minn. 1, 14, 142 N.W.2d 573, 581 (1966). As with Johnson's other allegations, this claim of prosecutorial misconduct does not warrant a new trial.

## IV.

■ Johnson argues that one of his convictions and sentences must be vacated. Minn.Stat. § 609.04 (1998) prevents multiple convictions based on the same conduct committed against the same victim. *See, e.g., State v. Koonsman*, 281 N.W.2d 487, 489–90 (Minn.1979) (holding that it would violate § 609.04 to enter four convictions for one act of criminal sexual conduct); *State v. Bowser*, 307 N.W.2d 778, 779 (Minn.1981) (holding that section 609.04 prohibits multiple convictions under different sections of the same statute for a single criminal act against the same victim). *But see State v. Hesse*, 281 N.W.2d 491, 493 (Minn.1979) (upholding convictions for first-degree criminal sexual conduct and incest for the same behavioral incident).

■ In the end only one murder has occurred in this case even though it may satisfy more than one definition of first-degree murder. Because Johnson was convicted of two offenses under different sections of Minn.Stat. § 609.185 for a single criminal act, one of the convictions must be vacated. Further, because one of Johnson's convictions must be vacated, only one sentence can be imposed. We vacate the judgment of conviction and sentence for first-degree murder committed during the course of an attempted aggravated robbery. We affirm the conviction and sentence for first-degree premeditated murder.

We affirm, but vacate the judgment of conviction and sentence for first-degree murder committed during the course of an attempted aggravated robbery.

Affirmed in part, vacated in part.

PAGE, Justice (concurring specially).

While I concur in the result reached by the court, I write separately about the court's use of accomplice testimony to support Johnson's conviction when that testimony is corroborated by nothing more

than general facts showing the commission and circumstances of the crime. I believe that the court's use of the accomplice's general fact testimony for corroborative purposes is improper and unnecessary. "Corroborating evidence is sufficient if it 'restores confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial degree.'" *State v. Ford*, 539 N.W.2d 214, 225 (Minn.1995) (quoting *State v. Scruggs*, 421 N.W.2d 707, 713 (Minn.1988)). Johnson argues that it is improper to use these general facts to corroborate the accomplice's testimony because these facts do not tend to convict him of first-degree premeditated murder.[1] Johnson is correct.

Here, for purposes of corroboration of the accomplice testimony, the court relies on evidence that confirms the truth of the accomplice's testimony but which does not point to Johnson being guilty of first-degree premeditated murder. The accomplice's testimony that three men approached Mr. Fernland, with one asking for the time, that Mr. Fernland was shot in the back, that Mr. Fernland was trying to run when shot, that the gun jammed, that there was laughter after Mr. Fernland was shot, that the perpetrators fled down an alley in a white Mercury Mountaineer, that a tire track in the alley matched a tire on Howard's Mountaineer, and that the accomplice and Johnson stole cars to get to and from St. Cloud after the shooting, is corroborated by evidence confirming the truth of those facts. The corroboration of this testimony is not sufficient to corroborate the accomplice's testimony that Johnson was the shooter.

The underlying rationale for requiring corroboration of accomplice testimony is that such testimony exposes the accused "to the danger of imprisonment based on the testimony of a witness naturally inclined to shift or diffuse criminal responsibility." *State v. Mathiasen*, 267 Minn. 393, 399, 127 N.W.2d 534, 539 (1964). Given the potential for blame shifting, the accomplice's testimony regarding general facts showing the commission and circumstances of Mr. Fernland's murder that are not corroborated by evidence pointing to Johnson as the shooter cannot be used to support Johnson's first-degree premeditated murder conviction.

Although the accomplice testimony discussed above should not be used to support Johnson's first-degree premeditated murder conviction, his conviction must nonetheless be affirmed because there was sufficient evidence pointing to his guilt. Part of the accomplice's testimony includes corroborative evidence: that Johnson hid the gun in Pritchard's garage, which was corroborated by Pritchard's testimony that Johnson told him that he hid a gun in Pritchard's garage; that Johnson laughed after the shooting and appeared happy, which was corroborated by Pritchard's testimony that Johnson appeared happy when he arrived at Pritchard's house on the night of the shooting; and that Johnson was the shooter, which was sufficiently corroborated by Pritchard's testimony that Johnson told him "we" shot someone, to convict Johnson of first-degree felony murder. In addition, the evidence regarding Johnson's gunshot wound from a gun and bullet similar to that used to shoot Mr. Fernland points to Johnson's guilt. This evidence, coupled with the other evidence admitted at trial, when viewed in the light

---

1. I question whether we should even reach this issue. Under Minn.Stat. § 609.04 (1998), only one of Johnson's two convictions may be upheld—the other must be vacated. The penalty for each is the same and there appears to be no required reason to vacate the first-degree felony murder conviction instead of

the first-degree premeditated murder conviction. Because there is sufficient evidence to sustain Johnson's first-degree felony murder conviction, if we were to vacate the first-degree premeditated murder conviction, there would be no need to rule on the corroboration issue.

most favorable to the verdict, was sufficient to support the conviction.

PAUL H. ANDERSON, Justice (concurring specially).

I join in the special concurrence of Justice PAGE.