*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1074**

State of Minnesota,
Respondent,

vs.

Michael John Karau,
Appellant.

**Filed July 11, 2016
Affirmed
Stauber, Judge**

Clay County District Court
File No. 14CR141136

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brian J. Melton, Clay County Attorney, Pamela Harris, Assistant County Attorney, Moorhead, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Stauber, Judge; and John Smith, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STAUBER**, Judge

On appeal from his conviction of attempted second-degree intentional murder, appellant argues that his conviction must be reversed because the state failed to prove that he possessed the specific intent to kill the complainant. We affirm.

## FACTS

Following events that occurred in the early morning hours of April 10, 2014, appellant Michael Karau was charged by amended complaint with (1) attempted first-degree premeditated murder; (2) attempted first-degree domestic-abuse murder; (3) first-degree assault, great bodily harm; (4) second degree assault, substantial bodily harm; (5) felony domestic assault; and (6) false imprisonment. At appellant's bench trial, evidence established that J.F. and appellant were good friends who lived together and eventually developed a romantic relationship. According to J.F., appellant was physically abusive during their relationship, but she never reported any incidents to police or sought medical treatment for her injuries.

On April 9, 2014, appellant arrived home at about 9:30 p.m. after working his job as a laborer for a handyman service. Appellant spent the evening drinking and socializing with J.F., but the couple began to argue around midnight. Appellant then pulled J.F. into a bedroom by her hair where he climbed on top of her and began to hit her on the head and face. According to J.F., appellant told her that "he was going to kill" her, and asked her how she "want[ed] to go out." J.F. also claimed that she was unable to "get away" because appellant had taken her cellphone.

After beating J.F. "[c]ontinuously" for about two hours in the first bedroom, appellant dragged J.F. through the kitchen and living room area into the master bedroom where he continued to assault her with his fists. At some point during the assault in the master bedroom, appellant struck J.F. in the head at least three times with a metal baseball bat, knocking J.F. unconscious. Appellant also beat J.F.'s head against the headboard of the bed, beat her head against the wall, and bit her lip. Near the end of the assault, appellant ran water in the bathtub and held J.F.'s head under water until she inhaled water, choked, and lost consciousness.

Appellant eventually fell asleep at about 5:30 a.m. J.F. was then able to retrieve her cellphone, which fell out of appellant's pocket while he was sleeping, and contacted her brother, who arrived and later transported her to the hospital. J.F. was beaten so badly that she was unrecognizable to her family members, and exhibits admitted at trial depicted the extent of her injuries. J.F. suffered a chipped tooth, broken nose, two fractured thoracic vertebrae, broken sacrum, head lacerations that required numerous stiches, respectively, and bruises all over her body. J.F. testified that throughout the assault, appellant repeatedly threatened to kill her, and at one point threatened to pour battery acid on her face and body.

During trial, the district court dismissed the attempted-domestic-murder charge. The district court later acquitted appellant of attempted first-degree premeditated murder, but convicted him of the lesser-included charge of attempted second-degree intentional murder. The district court found that when appellant struck J.F. with the bat, and when he submerged her head underwater in the bathtub, appellant's "anger against [J.F.]

3

escalated to the point where he, for a short period of time (a few moments) formed the intent to kill the victim, during an unconsidered, rash impulse." The district court also found appellant guilty of second-degree assault, domestic assault, and false imprisonment, but not guilty of first-degree assault. Appellant was sentenced to 207 months for attempted second-degree intentional murder. This appeal followed.

## D E C I S I O N

When reviewing the sufficiency of the evidence, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the [fact-finder] to reach the verdict which [it] did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We assume that the fact-finder believed evidence that supports the verdict and disbelieved conflicting evidence. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). We also afford a district court's findings the same weight as a jury verdict and will not set them aside unless they are clearly erroneous. *Walker v. State*, 394 N.W.2d 192, 196 (Minn. App. 1986), *review denied* (Minn. Nov. 26, 1986).

Appellant was found guilty of attempted second-degree intentional murder. Intent to cause the death of a human being is an element of this crime. Minn. Stat. § 609.19, subd. 1(1) (2012). Intent "means that the actor either has the purpose to do the thing or cause the result specified or believes that the act, if successful, will cause the result." Minn. Stat. § 609.02, subd. 9(4) (2012); *see State v. Noble*, 669 N.W.2d 915, 919 (Minn. App. 2003) (stating that "[a]n attempt requires that the actor have specific intent to perform acts and attain a result which if accomplished would constitute the crime

4

alleged"), *review denied* (Minn. Dec. 23, 2003). "A jury is permitted to infer that a person intends the natural and probable consequences of their actions." *State v. Johnson*, 616 N.W.2d 720, 726 (Minn. 2000).

Appellant argues that the "state failed to prove beyond a reasonable doubt that he possessed the specific intent to kill [J.F.]." Appellant contends that because "the bulk of the evidence relied on by the district court to find an intent to kill was the circumstantial evidence of the assault," the circumstantial-evidence standard of review is applicable. The state concedes that the circumstantial-evidence standard of review applies, but asserts that under that standard the evidence is sufficient to support the guilty verdict.

"A conviction based on circumstantial evidence warrants stricter scrutiny." *State v. Smith*, 619 N.W.2d 766, 769 (Minn. App. 2000), *review denied* (Minn. Jan. 16, 2001). In determining whether the evidence is sufficient to sustain a conviction based on circumstantial evidence, we are required to perform a two-step analysis. *State v. Hayes*, 831 N.W.2d 546, 552-53 (Minn. 2013). First, we determine the circumstances proved. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). In doing so, we give due deference to the fact-finder and construe the evidence in the light most favorable to the verdict. *Id.* at 598-99.

Here, when viewed in the light most favorable to the verdict, the following circumstances were proved by the state. For approximately six hours during the early morning of April 10, 2014, appellant continuously beat J.F. with his fists in two separate rooms. Appellant also kicked J.F., beat her head against the wall and the headboard of a bed, bit her lip, struck her on her head at least three times with a metal baseball bat, and

held her head under water in the bathtub. J.F. lost consciousness both after being struck with the bat and being held underwater. Moreover, appellant continuously stated throughout the assault that he "was going to kill" J.F., and repeatedly asked her how she "want[ed] to go out." As a result of appellant's conduct, J.F. sustained a chipped tooth, a broken nose, two fractured vertebrae, a broken sacrum, cuts behind her ear and on her mouth that required numerous stiches, and numerous bruises all over her body. And because of the broken vertebrae, J.F. was required to wear a neck brace for two months.

The second step of the circumstantial-evidence test requires us to determine "whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotations omitted). At this second step, we provide no deference to the factfinder's choice between reasonable inferences. *State v. Anderson*, 784 N.W.2d 320, 329–30 (Minn. 2010). "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted).

Appellant argues that the circumstances proved are insufficient to lead only to the inference that he intended to kill J.F. because he did not "employ a gun or knife" to inflict J.F.'s injuries. We disagree. First, the metal baseball bat could be used as a lethal weapon. *See, e.g., State v. Coauette*, 601 N.W.2d 443, 447 (Minn. App. 1999) (noting that "[o]rdinary objects can . . . be transformed into dangerous weapons"), *review denied* (Minn. Dec. 14, 1999). Second, appellant hit J.F. on the head at least three times with the

bat and held her head under water until she lost consciousness. The obvious and known consequences of such actions is death, and the only reasonable inference from those actions is that appellant intended this result. *See Johnson*, 616 N.W.2d at 726 (stating that a fact-finder "is permitted to infer that a person intends the natural and probable consequences of their actions"). The absence of a reasonable inference that appellant *did not* intend to kill J.F. is further demonstrated by appellant's death threats to J.F. throughout the assault. *See Johnson*, 616 N.W.2d at 726 (stating that "[a] state of mind generally is proven circumstantially, by inference from words and acts of the actor both before and after the incident").

Appellant next argues that the lack of serious injuries to J.F. supports a reasonable inference that he lacked intent to kill her. Again, we disagree. If appellant had pointed a gun at J.F.'s head, shot, and missed, the lack of a gunshot wound would not diminish his intent to kill. Rather, inference of intent to kill arises when an actor commits an act that could cause the death of another. *See Stiles v. State*, 664 N.W.2d 315, 320 (Minn. 2003) (noting that "pointing a loaded gun at a person and firing it is likely to cause death, and leads to an inference of intent"). Here, J.F.'s near-drowning and being struck repeatedly on the head with a baseball bat were life-threatening acts. Intent is not shown only by J.F.'s actual injuries, but also by appellant's actions to inflict those injuries. Those actions permit only an inference of intent to kill.

Finally, in a related argument, appellant asserts that because his assault did not result in J.F.'s death, the known facts do not support a reasonable inference that he intended to kill her. Although J.F. survived the prolonged assault, the only reasonable

inference from appellant's beating and near-drowning of J.F. is that appellant intended to kill her.  As the state points out, "[f]ailure in the attempt does not amount to lack of intent."  Appellant may have altered his intent several times during the assault, but during the aforementioned episodes, the record does not support a rational hypothesis other than that appellant intended to kill J.F.  Accordingly, there is sufficient evidence in the record to support appellant's conviction for attempted second-degree intentional murder.

**Affirmed.**