ANDERSON, Justice
(dissenting).
It is undisputed that appellant Anthony Cox murdered Aaron Moran.[1] The question presented to our court is whether Cox premeditated the murder. I conclude that, by upholding the conviction of Cox for first-degree premeditated murder, the court has further blurred the already amorphous line between intentional murder and premeditated murder.
The Legislature chose to distinguish between intentional murders and premeditated murders. Because the court’s opinion erodes this distinction, and because the circumstances proved in this brutal killing are equally consistent with an intentional, but not premeditated murder, I respectfully dissent.
i.
On October 8, 2013, Cox and a friend, Brooks Kurr, planned to rob Moran at his home in Shakopee. Although Cox did not know Moran, Kurr knew Moran well and knew that Moran often carried cash. Kurr drove Cox to Moran’s neighborhood and parked the car a few blocks from Moran’s home. Kurr gave Cox a .38 caliber handgun “for intimidation purposes and, ... if necessaiy, force” and sent Cox to complete the robbery while Kurr waited in the vehicle. Cox walked toward Moran’s home, but he became lost, was unable to locate the home, and abandoned the robbery attempt.
Kurr and Cox returned to Moran’s neighborhood 2 weeks later, on October 22,. The plan for the robbery was identical to October 8. On this occasion, however, Cox brought a .357 magnum handgun, which he had purchased sometime between October 8 and October 22, and extra ammunition for the handgun. Cox-wore a cotton glove on his left hand and a “pistol grip-type glove” on his right hand.
Cox entered Moran’s home through the front door, encountered Moran’s then-15yeár-old nephew B.M., and announced that “this is a robbery.” Cox closed the curtains and asked B.M. whether there was anyone else in the home. B.M. ‘responded by asking whether a Town Car was parked in the driveway. When Cox indicated that there was no Town Car in the driveway, B.M. told Cox that no one else was in the home. Cox then said, “If there [is] someone in the house it be ok if I just killed everybody — ” Cox then told B.M. to take him on a tour of the home.
About this time, Moran walked into the home through the front door. Moran saw Cox, who pointed the. .357 magnum at Moran. Cox said,. “This is the one I’m looking for.” Just then, Moran’s cell phone began to ring. Moran reached for the phone and Cox ordered him to show his hands. Moran ignored Cox’s orders and pulled the phone completely out of his pocket. Cox ordered Moran to put. the phone down. Moran again ignored the order and Cox shot Moran in the right thigh.. The shot shattered Moran’s femur.
B.M! turned away and covered his ears. According to B.M., a total of 40 seconds elapsed between the first time Cox ordered Moran to show his hands and the first shot. Cox later told police that, after the first shot, he- gave Moran another opportunity to comply with his order to put down the phone. Moran continued to ig *417 nore Cox’s commands and Cox shot him again, this time in the chest. Moran stumbled back toward the door and Cox fired two more shots in rapid succession, causing Moran to fall on his back.
Cox directed B.M. to retrieve Moran’s wallet. After going through the wallet, Cox directed B.M. to continue "with the tour of the home. Cox followed B.M. throughout the'home, taking various items along the way. Cox then asked B.M. whether he had any duct tape or rope, and B.M. indicated that he did not, Cox then instructed B.M. to put his hands on his head, close'his eyes, and count to 120. When B.M. finished counting, Cox was gone and B.M. immediately called 911. Police responded to the scene and found Moran dead oh the floor.
Kurr testified that after he picked up Cox, Cox informed him that he had shot Moran, in the leg. Later that night, Cox was seen laughing and showing off his gun. The following day, Kurr and Cox learned that Moran had died and Cox laughed and said: “I always wanted to kill a white boy ever since a white boy killed my brother.”
A short time after Moran’s death, investigators identified Kurr as a suspect. Based on Kurr’s relationship with Cox, the authorities also identified Cox as a suspect. On October 26, 2013, Cox was arrested in an alley hear Morah’s house carrying B,M.’s backpack, three .357 rounds, and Moran’s cell phone. When he was interviewed by police, Cox admitted shooting Moran and gave an account of events that largely tracked B.M.’s testimony.
In' December 2013, a Scott CoUnty grand jury indicted Cox on charges of first-degree premeditated murder, first-degree felony intentional murder, and first-degree aggravated robbery. A jury found Cox guilty of all counts. The district court convicted Cox of first-degree premeditated murder and sentenced him to life in prison without the possibility of release. ;
On direct appeal to our court, Cox argues that his conviction should be reversed on two ‘grounds. First, Cox argues that his statement to police wás involuntary and therefore improperly admitted at trial. I join Part I of the court’s opinion denying Cox’s claims regarding his statement to police. ■ Second, Cox argues that there was insufficient evidence to support his conviction for first-degree premeditated murder. Because- the evidence presented by the State is insufficient to support a finding of premeditation, I respectfully dissent.
II.
In Minnesota, 'the crimes of intentional murder and premeditated murder are distinct.[2] The crime of. second-dégree intentional murder is committed when a defendant “causes the death of a human being with intent to effect the - death of that person or another, but without premeditation.” Minn.Stat. § 609.19, subd. 1(1) (2014). First-degree premeditated murder, on the "other hand, is committed when *418 a defendant “causes the death of a human being with premeditation and with intent to.effect the death of the person.” Minn. Stat. §. 609.185(a)(1) (2014).
The sole difference between first-degree premeditated murder and second-degree intentional murder is the element of premeditation, which is defined as “to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission.” MinmStat. § 609.18 (2014). Yet. the Legislature created two separate crimes and attached substantially different sentences to those two crimes. Compare MinmStat. § 609.185(a)' (2014) (stating that anyone found guilty of first-degree murder “shall be sentenced to imprisonment for life”), with MinmStat. § 609.19,, subd. 1 (2014) (stating that an individual found guilty of second-degree intentional murder “may be sentenced to imprisonment for not more than 40 years”).[3] Thus, it is imperative that we give effect to the clear intent of the Legislature to differentiate between murders that are premeditated— that is, considered, planned, and prepared for — and murders that are intentional, but not premeditated.
“This court, and many other courts, have struggled to give effect to the distinction between” a premeditated murder and an intentional murder. State v. Moore, 481 N.W.2d 355, 360 (Minn.1992). At one time, our court held that premeditation may occur “instantaneously” and almost simultaneously with the intent to kill. See State v. Neumann, 262 N.W.2d 426, 430 (Minn.1978). But we later recognized that this rule impermissibly blurred the line between first-degree murder and second-degree murder. Moore, 481 N.W.2d at 360-61. Consequently, we now require that “some appreciable time” pass between the moment the defendant forms the intent to kill and the time the actual murder occurs for there to be premeditation. Id.
Similarly, we have previously inferred “premeditation solely from the number of times a weapon is used.” State v. Lloyd, 345 N.W.2d 240, 245 (Minn.1984) (citing State v. Hare, 278 Minn. 405, 408, 154 N.W.2d 820, 822 (1967)). Once again, however, we recognized that this rule inappropriately broadened the scope of premeditated murder and reversed course. Now, although the number of times a weapon is used is considered relevant to the issue of premeditation, the number of wounds inflicted cannot, by itself, support an inference of premeditation. Id.
*419 These course corrections are only a small sampling of the struggles we have faced when attempting to maintain the distinction between a premeditated murder and an intentional murder. Over the years, we have developed a complex and nuanced framework for determining whether a jury’s finding of premeditation is justified. “We consider three categories of evidence relevant to an inference of premeditation: planning activity, motive, and the nature of the killing.” State v. Yang, 774 N.W.2d 539, 560 (Minn.2009). The defendant’s conduct after the killing also can be relevant when determining whether the killing was premeditated. See State v. Johnson, 616 N.W.2d 720, 726 (Minn.2000).
“Premeditation is a state of mind and, thus, generally proven through circumstantial evidence.” State v. Leake, 699 N.W.2d 312, 319 (Minn.2005). When, as in this case, the conviction is based on circumstantial evidence, it “warrants particular scrutiny.” State v. Bolstad, 686 N.W.2d 531, 539 (Minn.2004). Nonetheless, “circumstantial evidence in a criminal case is entitled to as much weight as any other type of evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational or reasonable hypothesis except for that of guilt.” State v. Wallace, 558 N.W.2d 469, 472 (Minn.1997).
We apply a two-step test to determine whether circumstantial evidence supports the conviction:
First, we must identify the circumstances proved, giving deference to the jury’s acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State. Second, we independently examine the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt. Thus, our review consists of determining whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt.
State v. Anderson, 789 N.W.2d 227, 241-42 (Minn.2010) (citation omitted) (internal quotation marks omitted). When applying this test, “we view the evidence as a whole, not as discrete and isolated facts.” State v. Palmer, 803 N.W.2d 727, 733 (Minn.2011). But “ ‘if any one or more circumstances found proved are inconsistent with guilt, or consistent with innocence, then a reasonable doubt as to guilt arises.’ ” State v. Al-Naseer, 788 N.W.2d 469, 474 (Minn.2010) (quoting State v. Andersen, 784 N.W.2d 320, 338 (Minn.2010) (Meyer, J., concurring)).
There is no dispute that Cox intentionally killed Moran. Cox argues, however, that he killed Moran as part of a rash impulse, not a premeditated act. As a result, the relevant inquiry is whether the circumstances proved by the state are consistent with the conclusion that Cox premeditated the killing and inconsistent with any other rational hypothesis. I address the circumstances proved in turn.
A.
“Planning activity includes ‘facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward .the killing.’ ” State v. Ortega, 813 N.W.2d 86, 100 (Minn.2012) (quoting State v. Hughes, 749 N.W.2d 307, 313 (Minn.2008)). The court’s opinion identifies several facts as circumstances proved that are relevant to Cox’s planning activity. Although each of the circumstances identified by the court could be consistent with a finding of premedita *420 tion, each circumstance identified is also consistent with a killing that was intentional, but not premeditated.
First, the court cites the fact- that Cox armed himself with a handgun prior to the robbery. The court accurately notes that we have’previously held that “prior possession of a murder weapon can be considered planning activity.” See Palmier, 803 N.W.2d at 734. It is undeniably true, .that the prior possession of the murder weapon can, under certain circumstances, point unerringly toward premeditation. But that can only be true when there is not another, reasonable explanation. for the defendant to have prior possession of the murder weapon.
In State v. Andersen, for -instance, the defendant argued that taking a. rifle into the woods could not bé used as a basis for premeditation because it was common for residents in the area to take firearms into the woods. 784 N.W.2d 320, 332 (Minn. 2010). As a result, we looked to other evidence that indicated premeditation, such as the defendant’s isolation of the victim and laying in wait for him. Id. In Palmer, which the majority cites for this proposition, the defendant took a handgun with him to help collect a drug debt, raising the possibility that he brought the gun for a reason other than a premeditated killing. See 803 N.W.2d at 730-31. But the defendant also wiped the cartridges with which he loaded the handgun to remove his fingerprints, demonstrating that he was already contemplating using the handgun in an illegal manner. Id. at 731, 735. These eases illustrate that we must look for other evidence of premeditation when a defendant may have had a reason to possess the murder weapon that is consistent with a hypothesis other than premeditated murder.
In this case, Cox had a reason to possess the firearm other than committing a premeditated. murder. Specifically, Cox was armed in order to facilitate the commission of an armed robbery through “intimidation purposes and, ... if necessary, force.” The court notes that arming oneself for a robbery can be indicative of premeditation if the defendant has determined to kill anyone who impedes his progress.[4] But Cox’s actions during the robbery are inconsistent with a defendant who had predetermined to kill anyone who interfered with hisrobbery.
Rather than simply killing Moran at the first sign of resistance, Cox first shot Moran in the leg and again ordered him to put down his phone. It was only after Moran did not cooperate with Cox a second time that Cox shot .Moran in the chest. In other words, Cox’s first inclination was to use the handgun to intimidate Moran or force him to comply, not to kill.
Although the fact that Cox possessed the handgun is consistent with premedita-1 tion, it is also' consistent with the conclusion that Cox armed himself before the robbery for the purpose of facilitating the robbery through intimidation or nonlethal force. A rule declaring that possessing a weapon during a robbery is always indicative of a premeditated intent to kill is inconsistent with our framework for evalu *421 ating evidence of premeditation.[5] Simply put, the fact that Cox possessed the murder weapon before the killing does not exclusively support a finding of premeditation — it is also consistent with the hypothesis that Cox premeditated only an armed robbery.
Second, the court notes that Cox wore a special glove on his right hand. The court readily admits that we have never held that wearing a “pistol grip” glove is evidence of premeditation. Nonetheless, the court concludes that the glove supports a finding of premeditation. The presence of the glove is of limited relevance' at best. The court also notes that Cox had used his handgun at a shooting range. It is just as likely that Cox used the special glove at the shooting range and wore it on the day of the murder simply because he-had his handgun with, him, giving little-if any thought to putting on the glove. Indeed, it would be just as easy to say that a hypothetical defendant clearly premeditated- a murder because he wore running shoes to make a successful escape; The presence of the glove is no more proof of premeditation than the gun itself; put another way, the glove is as much a part of the armed robbery and planned. -intimidation as the gun and proves little, if anything, about premeditation.
■ Finally, the court's opinion highlights two statements Cox made during the incident. First, Cox commented to B.M. that Cox “might just kill everybody” if B.M. was lying about being alone in the home. Although this threat would be consistent with a finding of premeditation, it is simultaneously consistent with attempting to complete an armed robbery through threats and intimidation. Nothing about Cox’s statement points exclusively toward a premeditated killing. Indeed, Cox’s subsequent actions — namely, that he did not loll Moran on sight nor at. any point kill or attempt to Mil B.M. — indicate that the threat was mere puffery in the course of the robbery.
The court makes 'much of Cox’s statement, upon seeing Moran, that “this is the one I’m looMng for.” According to' the court, this statement shows that Cox had focused his attention on Moran. But this proves nothing. Of course Cox’s focus was on Moran. Cox came to Moran’s house for the express purpose of robbing Moran. In fact, Kurr and Cox selected Moran specifically because Moran was known to carry cash. That Cox was focused on Moran does not demonstrate that Cox premeditated the MUing of Moran; it merely establishes that Cox premeditated the armed robbery of Moran.
None of the alleged planning activity that the court identifies points exclusively and persuasively toward a finding of premeditation. That Cox possessed the murder weapon prior to the Mlling may be consistent with a finding of premeditation, but it is also consistent with the theory that he possessed the handgun to facilitate the armed robbery and without intending to shoot or even Mil Moran or anyone else. The presence of a special glove, • although perhaps superficially interesting, does , not persuasively indicate premeditation to Mil. Finally, Cox made statements that would be consistent, with a finding of premeditation, but those statements are equally consistent with the hypothesis that he was simply attempting to complete the armed robbery.
*422 B.
The court does not rely on any evidence regarding motive for the shooting. Motive evidence is not necessary to sustain a finding of premeditation, but it can help strengthen the conclusion that the defendant considered the killing in advance. Palmer, 803 N.W.2d at 735. The absence of motive evidence is striking in this case. Simply put, "Cox had no motive to kill Moran, a stranger to him, until he became frustrated with Moran because Moran was not complying with Cox’s demands. This absence of motive, although not disposi-tive, is indicative of a rash and impulsive killing, not a premeditated killing.
C.
Next, we must examine the circumstances proved regarding the nature of the killing. The court identifies three main facts regarding the actual killing that support a finding of premeditation. First, the court notes that Cox paused between shots. Second, the court relies on the fact that Cox shot Moran .several times after Moran had been “incapacitated.” Finally, the court states that Cox shot Moran in the chest, indicating an intent to hit Moran’s vital organs.
The court notes that Cox paused between' shooting Moran in the leg and then shooting him three times in thé chest. The court emphasizes that a short pause between shots can support a finding of premeditation. And we have previously held that a ‘ short pause between shots could support an inference of premeditation. See State v. Buchanan, 431 N.W.2d 542, 548 (Minn.1988); State v. Richardson, 393 N.W.2d 657, 664 (Minn.1986); Lloyd, 345 N.W.2d at 246. But our case law provides less than robust support for this inference. Each of the cases that forms the bedrock for the inference was decided before our decision in Moore, which clarified that “some appreciable time” must pass between the formation of the intent to kill and the actual killing in order to sustain a finding of premeditation. 481 N.W.2d at 361. Our decision in Lloyd was the source of the idea that a pause between shots is indicative of premeditation. The Lloyd opinion relied heavily on the notion that premeditation can occur “instantaneously” in order to reach its conclusion and was closely linked with the concept of premeditation, which we expressly rejected in Moore. See Lloyd, 345 N.W.2d at 246.
It is true that no set amount of time is necessary for premeditation. State v. Hughes, 749 N.W.2d 307, 312 (Minn.2008). But the idea that a pause of mere moments between shots is sufficient to support a finding of premeditation is inconsistent with the holding in Moore that “some appreciable time” must pass between' the formation of the intent to kill and the actual killing. Cox shot Moran in the leg, then paused and gave Moran another chance- to comply- with his directions. When Moran continued to ignore Cox’s directions;- Cox fired the gun three more times, fatally wounding Moran. By relying on the short pause between the nonfatal and fatal shots, the court suggests that Cox premeditated Moran’s killing in the span of mere, seconds during which he again told Moran to put down the phone.
To hold that a pause of mere seconds between one shot and the next is consistent -with premeditation and inconsistent with any other hypothesis undermines the holding of Moore and, again, blurs the line between a premeditated murder and an intentional murder. Regardless of whether premeditation may be inferred from a short pause between shots, an issue we need not resolve here to conclude that the evidence of premeditation is insufficient, Cox’s actions are just as consistent with *423 the theory that he acted on a rash impulse as he became frustrated with Moran’s refusal to put down the phone. As a result, the pause between shots is not consistent only with a finding of premeditation and inconsistent with all other possible theories.
Next, the court states that premeditation can be inferred from the fact that Cox fired additional rounds after Moran was “incapacitated.” To support this conclusion, the court again cites Palmer. But Palmer is distinguishable. In Palmer, the defendant shot the victim, who fell to the ground. See 803 N.W.2d at 732. The defendant then walked over to the victim, stood over the victim, and “finished him off.” Id. Cox’s actions here bear little resemblance to the facts found in Palmer.
In fact, it is not clear that Moran was even “incapacitated” by the first shot. It is true that the shot broke his leg, but Moran continued to hold on to his phone and refused to comply with Cox’s direction to put down the phone. As a result, from the perspective of Cox, Moran was not incapacitated. The actions Cox took are just as consistent with the hypothesis that he shot Moran on a rash impulse because Moran was ignoring Cox.
The court also relies on the fact that Cox shot Moran in the chest, which contains vital organs. The placement of the wounds on a victim can be indicative of premeditation. See Ortega, 813 N.W.2d at 101. The fact that Cox shot Moran in the chest is consistent with a finding of premeditation. Once again, however, it is equally consistent with the theory that Cox killed Moran intentionally, as part of a rash impulse. None of the circumstances proved regarding the nature of the killing is consistent with a finding of premeditation and inconsistent with all other theories. As a result, the nature of the killing does not support a finding that Cox acted with premeditation.
D.
Finally, we consider the defendant’s actions following the killing. See Johnson, 616 N.W.2d at 726. The court identifies four circumstances proved regarding Cox’s actions after the killing. First, the court relies on the fact that Cox took Moran’s wallet after the shooting. See State v. Pilcher, 472 N.W.2d 327, 336 (Minn.1991). It is true that, under certain circumstances, looting the body of the victim can be considered evidence of premeditation. See id. In this case, however, taking Moran’s wallet was equally consistent with the theory that Cox shot Moran impulsively as part of an armed robbery, which he then continued to carry out. Thus, the fact that Cox took Moran’s wallet does not exclusively support a finding that the killing was premeditated.
Second, the court identifies several circumstances related to the fact that Cox did not render aid to Moran and instead continued with the robbery. A failure to render aid can be consistent with a finding of premeditation. See Hughes, 749 N.W.2d at 315. But in this case, Cox failed to render aid because he was continuing with the preplanned armed robbery. Cox’s failure to render aid, although reprehensible, is not exclusively consistent with a premeditated murder; his failure to render aid is just as consistent with the theory that he merely wanted to complete the robbery that he originally set out to commit.
Third, the court relies on -witness testimony that, on the night of the killing, Cox was seen laughing. We have previously stated that laughter in the aftermath of a killing is inconsistent with the theory that the defendant acted on a rash impulse. See Johnson, 616 N.W.2d at 726-27. In *424 Johnson, however, the defendant was seen laughing as he ran away from the scene. Id. The testimony here indicated that Cox was seen laughing hours after the murder occurred. Additionally, as the court notes later in its opinion, Cox did not learn that Moran had died until the next day. Although Cox’s actions are, again, reprehensible, the fact that he was seen laughing hours after the murder and before he even knew that Moran • had died is, at best, marginally relevant to 'the question of whether Cox premeditated Moran’s killing.
Finally, the court relies on a statement that Cox made to Kurr the day after the killing. 'When Cox and Kurr heard that Moran had died, Cox said, “I always wanted to kill a white boy ever since a white boy killed my brother.” Even the court’s opinion, though, places limited weight on this statement. Although the statement is shocking, to say the least, it is also not particularly probative of Cox’s state of mind before and during the shooting, and is certainly not enough to indicate that Cox acted with premeditation. In summary, none of the circumstances proved regarding Cox’s actions after the killing points exclusively to a finding of premeditation.
III.
' -Many of the circumstances proved in this cruel killing of Moran by Cox could be considered consistent with a premeditated murder. If that was all that was necessary to sustain the verdict, it would be easy to affirm the conviction. The problem, however, is- that the circumstances proved are also consistent with the theory that Cox murdered Moran as part of a rash impulse .in the course of a robbery.
The court’s holding in this case will make a premeditated murder out of virtually any armed robbery that results in a death. ■ More generally, an affirmance here of the premeditated murder conviction may leave few circumstances that fit the statutory definition of intentional murder. Given the legislative decision to distinguish between an intentional murder and a premeditated murder, that cannot be the law. The circumstance's as a whole in this case are not consistent only with the theory of a premeditated murder and inconsistent with all other rational theories. As a result, I would vacate the conviction for first-degree premeditated murder and remand this case to the district court for further proceedings.
GILDEA, Chief Justice-(dissenting).
I join in the dissent of Justice ANDERSON.

. I join in Part I of the court's opinion regarding the admissibility of appellant's statement to the police.

. English common law did not differentiate between what we now call- first-degree and second-degree murders. See Thomas A. Green, The Jury and the English Law of Homicide, 1200-1600, 74 Mich. L. Rev. 413, 417-21 (1975-76), All unjustified or inexcusable killings were felonious murders and all felonious murders were punishable by death. Id. In 1682 and 1683, at the insistence of William Penn, Pennsylvania became the first colony to formally distinguish between premeditated murders "and other killings. See Matthew A. Pauley, Murder by Premeditation, 36 Am. Crim. L. Rev. 145, 145-46 (1999). Most states, including Minnesota, .generally followed Pennsylvania’s formulation. See id.; see also Minn. Gen. -Stat. ch. 89, § 2 (1858) (“Such killing when perpetrated with a premeditated design to effect the death of a person killed, or any human being, shall be murder in the first degree....”),

. From 1858 until 1-911, Minnesota imposed the death sentence on defendants convicted of first-degree premeditated murder. See Minn. Gen. Stat. ch. 89, § 2 (1858) (providing that anyone convicted of first-degree premeditated murder “shall suffer the penalty of death”); Minn. Rev. Laws ch. 97, § 4876 (1905) (providing that first-degree premeditated murder “shall be punished by death”). In 1911, however, the law was amended and defendants convicted of first-degree premeditated murder were subject to the sentence of life in prison. Act of April 22, 1911, ch. 387, § 1, 1911 Minn. Laws 572, ’ 572 (changing the punishment for first-degree premeditated murder to "imprisonment for life”). Between 1911 and 2005, defendants convicted of first-degree premeditated murder were sentenced to life in prison, but were eligible for parole after 20 to 35 years in prison, depending on the timing of the offense and the defendant's conduct in prison, See, e.g., Minn. Rev. Laws ch. 105, § 5452 (1905) ("The state board of control may parole any prisoner: Provided ... [n]o convict serving a life sentence shall be paroled until he has served thirty-five years, less the diminution which would have been allowed for good conduct had his sentence been for thirty-five years_”). In 2005, the Legislature increased the penalty for first-degree premeditated murder by imposing the sentence of life without the possibility of release on all defendants convicted of first-degree premeditated murder. See Act of May 31, 2005, ch. 136, art. 2, § 5, 2005 Minn. Laws 901, 922 (codified at Minn.Stat. § 609.106 (2014)).

. The court cités our opinion in State v. Kirch, 322 N.W.2d 770 (Minn.1982), for this proposition. But Kirch did not involve a defendant arming himself in preparation for a robbery. In fact, Kirch concerned a standoff with police that resulted in the defendant shooting a police officer who entered the defendant's trailer home. Id. at 771-72. The statement in Kirch regarding arming oneself for a robbery is mere dicta and is based on the advisory committee's comments to Minn.Stat. § 609.18 (1964). See Kirch, 322 N.W.2d at 773.

. Additionally, such a rule would render portions of the first-degree felony-murder law essentially irrelevant. See Minn.Stat. § 609.185(a)(3) (stating that a defendant commits first-degree murder when the defendant ' intentionally causes the death of another person "while committing or attempting to commit ... aggravated robbery").